## Luther Beecher v. Peter Baldy and Others.

The Constitution of 1850 is repugnant to the Homestead 'Law of 1848, as respects the value of the homestead to be exempted, and, to that extent, repeals it.

Where a homestead is within the constitutional quantity, but exceeds the value of fifteen hundred dollars, it may be reduced in quantity so as to bring it within the required value, provided it can be so reduced by division as to leave a homestead within the specific value, without cutting off any of that which, in fact, goes to constitute it a homestead; in other words, so as to leave the dwelling-house, with the out-buildings and appurtenances necessary to its ordinary use as such.

But if, when reduced as far as it is devisable, such homestead still exceeds the value of fifteen hundred dollars, it is not one of the homesteads described in the Constitution as exempt, and cannot be exempted by the operation of that instrument alone. It is the *land*, including the dwelling-house and appurtenances, owned and occupied by the debtor as a homestead, and nothing else, which the Constitution of its own force, exempts. And while it is competent for the Legislature in such case to exempt something out of it, or in lieu of it, as an equivalent in value, it is matter of legislation, not of judicial discretion, to say what that equivalent shall be.

The Constitution is an express prohibition against a forced sale on execution of the homestead which it describes; and, as such prohibition, it needs no legislation to give it effect. If the tract out of which a homestead is claimed consists of a greater quantity, or be of greater value, than allowed by the Constitution, yet if it be one which includes a constitutional homestead, and from which the right of selection is given, though further legislation might be necessary to enable the debtor to complete a valid selection, it would be the duty of the court to protect the right till such necessary legislation shall be had — to see that the prohibition of the Constitution is not violated.

The selection of a homestead, spoken of in the Constitution, necessarily implies a larger tract or greater amount of real estate from which the selection is to be made. But where the tract claimed by the debtor is all that he owns and occupies as a homestead, and is within the limited quantity and value, the whole is exempt without any selection, other than what is evinced by ownership and occupancy as a homestead. The law, in such case, presumes the acceptance by the debtor of the benefit conferred by the Constitution, to the full amount of the constitutional exemption.

As the Constitution in these cases has exempted the homestead absolutely, but no mode has yet been provided by legislation to determine the value of premises claimed as a homestead, when the value is disputed, and there being no other practicable mode of settling the question of value before sale, whenever a creditor has proceeded so far as to make a levy, either party may file a bill in equity, setting forth the nature of the case, and asking that a selection may be made by the householder, should the property be found to be divisible, and that the value may be ascertained, whether divisible or not. The value may

BEECHER v. BALDY.

then be ascertained either by directing an issue to a jury, or by reference to a commissioner to take proofs and report; and, in this manner, the rights of both parties may be secured according to the nature of the case.

But, unless this be done, or the householder clearly waive all right to a homestead, if the creditor proceed to sell, the purchaser must take upon himself the risk of being able to show, when he claims the property, that it was not exempt by reason of its excess in value, and that it was not divisible in such manner as to leave a homestead within the prescribed value. The debtor would be entitled to set up his rights, and this question might be litigated, in the suit brought to recover the property under the sale.

Where it is claimed that a debtor has waived his right to a part or the whole of a homestead exempted by the Constitution, it lies upon the party asserting such waiver to show it by affirmative proof. But where the householder is a married man, he cannot, by any waiver, consent to a sale on execution, so. as to render the sale valid, without the consent of the wife, any more than he can. convey it by deed without her signature. Such deed would be void, even as to the husband, under the express words of the Constitution. The object of the exemption was quite as much to protect the wife and family, as the husband.

Whenever the tract, including the homestead, exceeds the quantity limited by the Constitution, a selection becomes necessary to distinguish that which is exempt from that which may be sold at the instance of creditors.

In such case, the debtor must proceed under the statute of 1848 to bring the homestead within the quantity limited by the Constitution. But when this has been done, the statute remedy is exhausted; and the quantity so selected will all remain exempt, though it exceed the value limited by the Constitution, until the value shall be ascertained, and the selection perfected, in a court of equity, in the manner pointed out for cases involving the question of value only.

Under the clause, "whose homestead has not been selected and set apart by metes and bounds," used in the 3d section of the act of 1848, the selection may be regarded as having been made, in all those cases where ownership and occupancy constitute a selection, as above explained. No selection in writing is required, nor does the statute authorize any instrument, in evidence of it, to be acknowledged or recorded; and, if recorded, the record would have no legal effect.

Nor is the notification to the officer required to be in writing. It may be in any form which indicates to the officer, with reasonable certainty, the land claimed as a homestead, and may be made within a reasonable time after the debtor has notice of the levy.

*Heard November 11th and 12th. Decided December 9th.*

Questions reserved from Wayne Circuit, in Chancery.

Luther Beecher, filed his bill of complaint against Peter Baldy, William Jennison Jr., Edward V. Cicotte, and Francis X. Cicotte, setting forth that Peter Baldy, on the fifteenth day of April, 1858, recovered a judgment against complainant in the Circuit Court for the county of Wayne, for the sum of one thousand dollars and costs, which

Mion. 7—2G

judgment was recovered upon a debt incurred April 25th, 1857, and is still unpaid: that he is the owner and occupant of the easterly half of lot sixty, on the north side of Jefferson avenue, in the city of Detroit, on the Lambert Beaubien farm, and of a dwelling house situated thereon; that said lot is twenty - five feet front, by one hundred feet in depth; that the entire front of said lot is covered by said dwelling house; that he selected said premises many years ago, and long before the obtaining of said judgment, as his homestead, but that he made no registry or other entry of said selection, being advised that . the same was unnecessary and useless; that the value of the said premises was, at the time he selected the same, and is now, more than the sum of fifteen hundred dollars, to wit: the sum of five thousand dollars; that he claims said premises as his homestead, and resides thereupon, and has so resided for many years; and he insists that by the Constitution and laws of the state of Michigan, the same is exempt from execution, levy and sale:

That said Peter Baldy, on or about the fifteenth day of April last past, by William Jennison Jr., his attorney, sued out an execution upon said judgment, and put the same into the hands of Edward V. Cicotte, sheriff of said county of Wayne, for service; and the said Cicotte, by Francis X. Cicotte, his deputy, by virtue of said execution, and by direction of said Jennison, attorney for said Baldy, has (amongst other property) levied upon said homestead, and advertised the same, and the whole thereof, for sale by virtue of said execution; and said Baldy and Jennison give out and threaten, that the said homestead, and the whole thereof, shall be sold to the highest bidder, the same as though it were not complainant's homestead:

That on his first receiving notice of said levy, which was very recently, and after said levy, complainant notified said sheriff, that he regarded the said property as his homestead; that he had selected the same as such, and forbade him to sell the same.

And he prays, that defendants be restrained from selling or offering for sale said homestead, or any portion thereof; or that in case of sale thereof, they may be decreed to pay to complainant the sum of fifteen hundred dollars first received on account of the sale of said homestead, or that he may have such other and further relief as the nature of the case shall require.

The defendants demurred to the bill, for want of equity, and also for the following reasons:

Because it does not appear by complainant's bill that the selection by him of the premises described in said bill was made as his homestead (under the laws and Constitution of the State of Michigan) previous to or at the making of the levy thereon by the sheriff of the county of Wayne, mentioned in said bill; nor *when* said complainant made the selection of the premises mentioned in said bill as his homestead, nor how such selection *is shown* or manifested.

And further, that said bill does not state *when* complainant *gave notice* to the officer holding the execution, that he claimed the premises levied upon as his homestead, or *how* he gave notice.

Upon the hearing of this case on demurrer to the bill, the following questions were reserved for the consideration of this court.

*First.* Whether, under the provisions of the Constitution and laws of this state, the complainant can select for a homestead the dwelling used and occupied by him, so as to enable him to hold it exempt from execution, without a selection in writing, executed, acknowledged and recorded, in the manner provided for the execution, acknowledgment and recording of deeds of real estate.

*Second.* Whether the dwelling house of complainant, situated as described in the bill, and which, with the lot, is worth the sum of five thousand dollars, can be selected by the owner and occupant thereof as a homestead, so as to exempt it from a levy and sale on execution.

*Third.* Whether any portion of, or interest in, such dwelling house can be so selected; and if so, what interest or portion, and how is the same to be selected, defined and reserved.

*Fourth.* Can a dwelling house thus situated, and of such value, and selected as a homestead by the owner and occupant thereof, be levied upon, and sold upon an execution against such occupant and owner, issuing upon a judgment founded upon an indebtedness incurred since the first day of January, 1857.

*Fifth.* If such dwelling house can be thus sold, has the owner and occupant thereof, being the debtor in execution, any right to any portion of the proceeds of said sale; and, if so, to what amount, and how is the same to be ascertained and secured to him?

*Sixth.* Must the notification to be made to the officer making the levy upon a homestead, required by § 4497 of Compiled Laws, be made at the time of the levy, or may it be made within a reasonable time after the debtor has notice of such levy, if before sale.

*Seventh.* Is it necessary that the notice to the sheriff, required by that section, should be in writing?

*Eighth.* Is said § 4497 still in force?

*C. I. Walker*, for complainant:

Exemption laws should receive, as they generally have received, a fair and liberal construction, so that the noble and humane purposes which they have in view shall be effectually carried out.— 10 *Metc.* 507; 24 *Conn.* 338; 22 *Pa. St.* 191; 22 *Ala.* 621; 20 *Mo.* 75; 3 *Sneed*, 630; 12 *B. Monr.* 57; 7 *Blackf.* 500; 3 *O. S. R.* 270; 15 *N. Y.* 489.

With this general principle in mind, let us examine the questions:

1. Neither the statute nor the Constitution points out how, or in what manner, the selection is to be made, so

as to make a residence a homestead. It is plain that it is "to be selected by the owner thereof," but beyond that, both the statute and the fundamental law is silent.

We submit, that mere occupation may be a selection where the premises occupied do not exceed in quantity that allowed for a homestead; and that, where they do so exceed, *any act or determination* of the occupant and owner making the selection is sufficient. It would be *legislation* to require such selection to be made by deed.

And it is clear, that by the third section of the law of 1848,—*Comp. L.*, § 4497—as *against an execution*, no previous selection is required. It is enough that the debtor "regards as his homestead" the dwelling he owns and occupies. If he occupies more than the permitted quantity, he may, *after the levy*, "select and set apart by metes and bounds" the premises he regards as his homestead. — 2 *Mich.* 469; 6 *Mich.* 468.

And it seems equally clear, that this selection need not be made by deed, or even in writing. He may "notify the officer." Notices in relation to proceedings in court should be in writing, although not expressly required; but not so "notices" of this character.—5 *B. & Ald.* 539; 15 *Wend.* 425 ; 5 *Hill* 101.

2. The second question may depend upon the question whether section one of the act of 1848 is still in force, for in that section there is no limitation to the value of the exempt homestead. It is unquestionably still in force, unless it has been repealed by implication, by *Const. Art.* XVI, § 2. One statute does not, by implication, repeal another, unless the repugnancy is clear and strong.— *Sedgw. on Stat.* 121, 129. The same rule is applicable to a repeal by a new constitution — *Sedgw. on Stat.* 489, 490 ; 3 *Mich.* 248; *Ibid.* 403, 405 ; 4 *Mich.* 244; 5 *Mich.* 259.

We think the fair construction of section 2 of Art.

XVI., is, that it is a requirement that, *at all events*, there shall be exempt a homestead of forty acres, or a town or city lot, with the dwelling, if the latter does not exceed in value $1500 — leaving to the Legislature to determine what should be the maximum value of such exempt homestead.

This view is very strongly confirmed by the history of this article in the Convention, and the debates upon it, as well as by the phraseology of section one, and the omission to put any limitation as to value, upon the forty acre homestead. — *Convention Debates*, 659, 661, 680, 740.

It is further confirmed by the action of the Legislature, or rather, by its non-action, in leaving the law of 1848 upon the statute book.

3. The third question only arises in case the court hold the second section of the law of 1848 to be repugnant to the Constitution. If repealed, the simple question arises, whether, if a debtor owns and occupies a homestead worth over fifteen hundred dollars, *the whole is. liable to execution;* or whether he may reserve a part thereof, up to the value of $1500, to be set apart according to the requirements of the law. We see no practical difficulties in this course. Portions of the house, and rights in passage-ways, etc., could be set apart, and the rights of all parties defined, as in setting off dower, and as portions of dwellings are set off under the appraisal laws of New England. — *Mass. R. S.* 464; *Vt. R. S.* 241.

Unless this can be done, the object of this humane provision will be entirely defeated, as to a large class of deserving debtors, and those, too, who will most keenly feel and suffer from the want of a homestead; and even the rise of property, making a homestead once worth $1400 to be worth $1600, would be a sad calamity, and the question of a homestead or complete destitution, might turn upon the weight of testimony as to the value of property.

4. The fourth question depends upon questions 2 and 3.

5. If the homestead can be sold because worth more than $1500, then it would seem that the proceeds, up to that limit, should be reserved for homestead purposes. In New York this is provided for by statute. May not this court accomplish the same result by its equity powers?

6. The debtor may make his selection of a homestead when the levy comes to his notice, and he must have a reasonable time in which to make it.— 2 *Mich.* 469.

7. The statute requires the debtor to "notify the officer." To hold that this requires a notice in writing, would be adding a qualification not contemplated by the statute, and not authorized by its language.

8. We see no ground for the pretence § 4497 of Comp. Laws is repealed. As to when statutes are repealed by implication, see *Sedgw. on Stat.* 121, 9, 489, 490.

*W. Jennison Jr., and G. E. Hand,* for defendants:

1. A subsequent statute revising the whole subject matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on principles of law as well as reason, operate to repeal the former.— *Sedgw. on Stat.* 124; *Smith Com.* 903 § 786; 12 *Mass.* 545; 1 *Pick.* 43, 45; 3 *Greene,* 22; 5 *Eng.* 590, 591. When some parts of a revised statute are omitted in the revising act, the parts omitted are not to be deemed as revised by construction, but are to be considered as annulled.— *Smith,* § 785; 12 *Mass.* 537, 545. While the law does not favor a repeal by implication, yet, when the provisions of two statutes are inconsistent with each other, the latter must prevail. — 5 *Hill,* 225, 226; 4 *Mich.* 95; 14 *Ill.* 419; 5 *McLean,* 178.

Applying these rules, and comparing the act of 1848 with the Constitution, it is clear, we think, that *the whole* of it is repealed. In examining the article in the Constitution on exemptions, we are compelled to admit that the framers of the Constitution contemplated a revision of the

whole subject — nay, so dissatisfied were they with the imperfections of the law of 1848, that they were unwilling it should bear the test of time. If this be so, the only law in force affecting this question, is found in § 2 of Art. XVI of the Constitution.

2. Under this section, before claiming this privilege, the debtor must place himself within the provisions of the Constitution. It is a special proceeding; the privilege is a personal one, and may be waived.— 3 *Mich.* 448, 458; 14 *Ga.* 271.

The provisions of this law are contrary to the course of the common law, and must be construed strictly. Our courts have decided that this principle applies to a constitutional provision of this character.— 4 *Mich.* 326; 5 *Denio* 120. The debtor must not only *own* and occupy the premises sought to be exempt from sale; he must select the same before levy, because the selection is the only evidence of his intention. After levy it is too late; the rights of creditors have attached.— 2 *Mich.* 469; 10 *Rich.* 395; 9 *Ind.* 196. So, by analogy, if the debtor would avail himself of the provisions regarding a mortgage on the homestead, his selection must be made before alienation. Such is the literal import of the language. To hold an alienation by the owner void without a prior selection, would render the words, "such mortgage or other alienation," as used in *Const. Art.* XVI § 1, void; which would violate all rules of construction. Again; The defendant in execution cannot complain that he had no notice of the levy. Every debtor who is sued and has property, has notice that after judgment an execution will issue, and that the sheriff is commanded to levy and sell.

Assuming that the selection was sufficient, the premises in question must not exceed in value $1,500. The Constitution describes, in effect, the homestead it would give the debtor. He must take that or none. He cannot choose. The object of this exemption was to protect the home of

BEECHEY *v.* BALDY.

the embarassed debtor from the fluctuations of fortune. The Constitution contemplates, and with reason, that the debtor will accept it in the spirit in which it is given, and hasten to perfect his right — not use it to deceive his creditor, and finally defraud him. If he possesses a property far exceeding in value the limits of the Constitution, it is in his power to sell, and bring himself within its provisions. The law will not assist him to defraud his creditor. It will rather construe his delay into a waiver. His over-abundance would prove his misfortune.

If it be said that the creditor is entitled to the surplus over $1,500, we answer, *first:* The Constitution has provided no mode of making the valuation, and no legislation has been had since. — 2 *Gray* 384; 4 *Mich.* 98; 2 *Mich.* 490. *Second:* It would involve a sale of the *whole* premises, which the Constitution expressly prohibits. — 1 *Mich.* 479. The intention was to give a *homestead;* not money. — 19 *Pa. St.* 255.

Statutes conferring particular exemptions in derogation of the common law rights of creditors, are regarded with a jealous eye, and are not to be extended by equitable construction. — *Sedgw. on Stat.* 314, 315, 344, 346; 5 *Denio*, 119; 3 *Mich.* 67. They are not remedial in the ordinary sense. — 5 *Denio*, 120; 11 *N. Y.* 602.

CHRISTIANCY J.:

Eight questions are reserved in this case for our opinion. These questions all relate to the exemption of a homestead from forced sale on execution. The debt due to the execution creditor accrued in April, 1857, since the adoption of the present Constitution; and these questions involve the construction of the sixteenth article of the Constitution, exempting a homestead, and the act of March 25th, 1848, upon the same subject. These questions may be more satisfactorily answered by taking a general view of the statute and the Constitution, and the extent to

which the former has been repealed or modified by the latter.

So far as the Constitution, in any of its provisions, is repugnant to the statute, the latter is repealed by it, as to all cases where the debt was contracted after the adoption of the Constitution. But, so far as the provisions of the statute may operate in subordination to the Constitution, and as a mode of carrying into effect the Constitutional exemption of a homestead, without conflicting in any way with the constitutional right to the same, the statute is still in force.

Such I understand to be the rule expressly declared by the first section of the schedule to the Constitution, and such, I think, must have been the rule without such express provision.

*First. As to the kind or description of a homestead to be exempted.* The statute and the Constitution substantially agree in the description of the property to be exempt as a homestead, with the single exception of its value. Under the statute, the property described was exempt without reference to its value, and under it the debtor might withhold from his creditors, property worth a hundred thousand dollars or more, while by this means his creditors might be utterly ruined; while many of them might be poor without a homestead of their own, and who would thus be deprived of the means of obtaining one; and others who relied upon the money due from him to pay for homesteads which they had purchased, might be turned homeless into the street, the debtor in the meantime being allowed to occupy and appropriate to himself a princely mansion, with expensive out buildings and improvements; sufficient, if sold, to purchase a comfortable homestead for himself and for each of these creditors. Injustice so glaring, inequality so gross, could not long be tolerated in any government making any pretensions to an enlightened and impartial administration of justice.

To remedy this injustice, and at the same time to secure a homestead for the necessary comfort of a family, the Constitution, which was framed only two years after this statute, while it exempted a homestead of the same description, in other respects, as that mentioned in the statute, at the same time limited this constitutional exemption to homesteads "*not exceeding in value fifteen hundred dollars.*" I speak now only of such homestead as the Constitution of its own force exempts, *ev nomine*, without the aid of legislation.

It is contended by complainant's counsel, that the phrase "not exceeding fifteen hundred dollars," is not to be construed as a limitation upon the power of the Legislature, but that the intention of the Constitution is only to require that a homestead to that amount, at least, shall be exempt at all events, leaving the Legislature to exempt to a greater amount if they should see fit; and hence, that it is not repugnant to the law of 1848, and that both may stand together. This construction would be unreasonable in itself, and contrary to the natural import of the language. To support such a construction, the Constitution should read, "*not less than*" (instead of "*not exceeding*") "fifteen hundred dollars."

We are all agreed that the sum mentioned in the Constitution is a limitation; that no homestead can be exempt as an entirety which, at the time it is first claimed as a homestead, is worth a greater amount; and that, therefore, the Constitution is thus far repugnant to the statute, and to this extent repeals it.

It is also clear that if a homestead is within the constitutional quantity, but exceeds the value of fifteen hundred dollars, it may be reduced in quantity so as to bring it within the required amount; provided it can be so reduced by division as to leave a homestead within the specified value, without cutting off any part of that which in fact goes to constitute it a homestead; in other words,

so as to leave the dwelling house, necessary out buildings, and appurtenances. And, in such case, the homestead, when so reduced, would be exempt, while the balance might be sold on execution. The mode of selecting and defining the homestead, in such a case, will be discussed when we come to that branch of the case.

But if, when reduced as far as divisible within the principles above expressed, it still exceed the value of fifteen hundred dollars, can it, under the Constitution alone, without further legislation, be further divided; or can the courts in any way secure to the debtor a benefit equal to the fifteen hundred dollars? We think not. This question has been so expressly decided in Iowa, under a statute which, so far as the present case is involved, is a copy of our statute of 1848, except that the value of the homestead is limited to five hundred dollars: thus presenting the question substantially as it is presented by our Constitution.—See *Helfenstein v. Cave*, 3 *Iowa*, 287.

We fully admit that the constitutional provision is an express prohibition against a forced sale on execution, of the homestead which it describes; and, as such prohibition that it needs no legislation to give it effect. And if the tract out of which a homestead is claimed consist of a greater quantity, or be of greater value than allowed by the Constitution, yet if it be one which includes a constitutional homestead, and from which the right of selection is given, though further legislation might be necessary in order to enable the debtor to make a valid selection, it would be the duty of the court to protect the right, till such necessary legislation should be had; to see that the prohibition of the Constitution was not violated, and that no sale should be made under execution which would take away this constitutional right of selection. The neglect of the Legislature, in such case, to perform its duty, would not authorize the courts to neglect theirs.

But the Constitution has only exempted a homestead as

an entirety; not a part of, or an undivided interest in, a homestead; and no latitude of construction can convert or pervert the language into an exemption of fifteen hundred dollars in money, in lieu or compensation of a homestead. It is the *land*, including the dwelling house and appurtenances, and constituting a homestead in fact, owned and occupied by the debtor, and nothing else, which the Constitution exempts. And to bring it within the designation of a homestead, which the Constitution, of its own force, exempts, it must possess all the descriptive features of the homestead described in the Constitution as *exempt*. These are as follows: 1st. It must contain the dwelling house and its appurtenances, without which it could not be a homestead in fact, under any definition. 2d. It must not exceed the quantity limited by the Constitution. 3d. It must be owned by the party claiming it. 4th. It must be occupied by him *as* a homestead; and 5th, it must not exceed in value fifteen hundred dollars. The last requisite is just as much matter of description as either of the others. If it be said that, being a limitation it is not therefore descriptive, then, by the same reasoning, the limitation as to quantity is not descriptive; and the exemption would be unlimited. There can be no more reason for treating the quantity, the ownership, or the occupancy, as descriptive, than the value.

If, then, when reduced in quantity as far as divisible, without cutting off any part of what is essential to constitute it a homestead — of what is necessary to its ordinary use as such — it still exceeds the specified value, it is not one of the homesteads, the forced sale of which is prohibited by the Constitution; and can not, therefore, be exempt by the operation of that instrument alone. The Constitution has exempted a homestead of a *certain description*. Where the homestead does not answer this description, it is competent for the Legislature to exempt something out of it, or in lieu of it, as an equivalent in value.

This would not be contrary to the Constitution, but in analogy to it. But what this equivalent should be, whether a part of the premises, their use for a certain time, or so much cash, as part of the proceeds of a sale, is matter for legislative, not for judicial, discretion. It is not for the courts to remedy all the inequalities, real or imaginary, of the Constitution or the statutes.

The premises claimed as a homestead in this case are stated in the bill to be worth five thousand dollars. This takes them out of the description of a homestead exempt by the Constitution. The only ground on which complainant could claim a homestead out of these premises at all, was by showing that they were divisible, in such manner as to leave a homestead, including the dwelling house and appurtenances, within the prescribed value. The bill alleges nothing of this kind; but from the description in the bill, it is quite evident they were not thus divisible. At all events, this being a right existing only by force of the Constitution, it was for the complainant, by his allegations, to bring himself within the Constitution; and not having alleged the premises to be divisible, they must, as the bill now stands, be considered indivisible, and therefore not exempt either wholly or in part.—See *Helfenstein v. Cave, ub. supra,* and same case, 6 *Clark (Iowa),* 374. This answers the second, third, fourth and fifth questions submitted for our opinion, and in fact disposes of the present case. But as other questions have been submitted, and the whole subject has been fully discussed by counsel, and is one of great practical importance, and especially since the opinion we have above expressed may be misapprehended without the discussion of other collateral questions; we depart in this instance from our usual course, and express our opinions upon several questions not necessary to the decision of the present case; and shall attempt to show how far, and in what manner, we think the constitutional provision exempting a homestead may be carried into effect without further legislation.

Having already shown what description of homestead is exempt by the Constitution, we proceed to, *Second,* the question of its selection. In what cases is any actual selection necessary, except that which is evinced by ownership and occupancy as a homestead, in order to bring it within the constitutional exemption?

To answer this, we must first settle the meaning of the phrase "*to be selected,*" as used in the Constitution. Now, whether we look to its derivation or its universal use, the term, "*to select,*" signifies to choose, or take some particular part or number from a greater; to take by preference from among others; to pick out; to cull. The term *selection* has never, we think, been used to express merely an election or option, whether to take *anything* or *nothing;* to insist upon, or to waive a right. The purpose for which a selection of a homestead is required, is exactly in accordance with this universal signification of the term. The obvious purpose for which the selection is required, is only to identify and define the property to which the exemption applies, so as to distinguish that which is exempt from that which may be sold at the instance of creditors. The selection in question, therefore, necessarily implies a larger tract or a greater amount of real estate from which the selection is to be made, and it is only for such cases that the statute of 1848 has provided a mode of selection. Both that and the Constitution are silent as to the election to claim a homestead at all, or to waive it altogether.

Hence in the case, 1st, *where the tract claimed by the debtor is all that he owns and occupies as a homestead, does not constitute part of a larger tract so owned and occupied, and is not capable of being reduced by division without cutting off part of what is essential to constitute it a homestead,* it is obvious that *no selection is possible,* either under the statute of 1848, or the Constitution, if we are to understand the selection to be made from the debtor's own property. There is nothing to se-

lect from; the question is the entire thing or nothing. In such a case no selection, in any sense of the term, is, we think, required either by the Constitution or the law. But, if any selection in such case is required, it must be in some sense of the term which renders it possible. It can only be possible in such case, by using the terms in the sense of choosing out or selecting a place of residence from the great mass of property in the state, without reference to the ownership of any, except the particular tract; in other words, that the party has chosen to obtain and occupy this particular place as a homestead, instead of purchasing and residing elsewhere in the state. Now the best, if not the only practicable evidence of such a selection is to be found in the mere facts of ownership and occupancy of the property as a homestead in fact. And as no other selection in such case is possible, if the tract be within the quantity limited by the statute, it will be exempt by the statute; and if within the quantity and value limited by the Constitution, it will be exempt by the latter, without any other selection. It is a homestead in fact; and as neither the Constitution nor the law has provided any particular mode of making known the dedication of it as a homestead, every man must take notice of the character of the occupant's claim.—See *Taylor v. Hargous*, 4 *Cal.* 268; and *Cook v. McChristian, Ibid* 23, cited in 18 *U. S. Dig., Title Homestead.*

But take, 2d, the case *where the tract is clearly within the quantity limited by the Constitution, and* ADMITTED *to be also within the constitutional limitation as to value, not constituting part of a larger tract owned by the debtor, but* CAPABLE OF DIVISION SO AS TO LEAVE A HOMESTEAD OF LESS VALUE, is any actual or formal selection necessary; or will its ownership and occupancy by the debtor, as a homestead in fact, exempt it as a homestead under the Constitution? We think it will, and that no other selection is necessary. All the reasons given for dispensing with any

other or formal selection, in the last preceding case mentioned, apply, we think, substantially, to the case here supposed, except that of the impossibility of the selection, which applies only to the former.

Under the statute of 1848, when the homestead was only limited in quantity, without reference to value, and which, as we have already seen, might be made an instrument of the grossest injustice, there may have been good reason for holding, as was suggested in *People v. Plumsted* (2 *Mich.* 469, 470) that a selection should be required in all cases, where the property would be divisible so as to leave a homestead entire, though of less dimensions than limited by the statute; in other words, the law might not, perhaps, in such case, presume the acceptance by the debtor of the benefit conferred by the statute, to the full amount of the exemption; since, as the court in that case seemed to think, this would in many cases be presuming dishonesty: though the court seem to have overlooked the obvious distinction between an election to claim any homestead at all, and the selection of it, which could only take place after this election had been made. But whether that case can be supported as a true construction of the statute with reference to the selection, we do not propose here to determine; as the case before us does not call for it, and as the statute, so far as it applies to the description of a homestead to be exempt, is in force only as to cases where the indebtedness accrued before the Constitution.

But under the Constitution the question, as respects the point we are now discussing, stands upon very different grounds. The Constitution limits the value of the homestead which it exempts, to fifteen hundred dollars. This exemption is not capable of the abuses to which the statute exemption was liable. The value is reasonable, and the exemption may be claimed to the full extent, as necessary to the comfort of a family, without any ground

for the imputation of dishonesty. We think, therefore, that *where the whole tract owned and occupied by the debtor does not exceed the quantity mentioned in the Constitution, and is admitted to be within the prescribed value,* the law, in the absence of any proof, must presume the acceptance by the debtor of the benefit conferred by the Constitution, to the full amount of the constitutional exemption; and this upon the same ground that the acceptance of a grant is presumed; that the Constitution only contemplates a selection when it is necessary to bring the homestead within the limitation, as to quantity and value, specified in the instrument, and as a means of separating it from a tract of larger amount, or greater value, and defining its boundaries.

Doubtless the debtor may consent to waive his right to a part or the whole of a homestead exempt by the Constitution; but it lies upon the party asserting such waiver to show it by affirmative proof. And when the householder is a married man, he can not probably, by any waiver, consent to a sale on execution, so as to render such sale valid without the consent of the wife. For, in such case, the validity of the sale would rest upon his consent in the same manner as if he had conveyed by deed: and if deeded by him under the like circumstances, the deed would be void, even as to him, without the signature of the wife. Such, we think, is the effect of the express provision of the Constitution. — See *Williams v. Starr,* 5 *Wis.* 534. The object of the exemption was quite as much to protect the wife and family, as the husband.

If, in either of the two classes of cases just mentioned, the value should be disputed, or, in other words, if the creditor claims that the tract, though within the *quantity* limited by the Constitution, exceeds the specified *value,* how is the value to be ascertained? In the first class of cases (where the tract is indivisible) no selection could be made; in the second, a selection might be required to bring

a tract of the prescribed quantity within the limitation as to value. The Constitution is entirely silent as to any mode of ascertaining the value, looking, doubtless, to legislation to provide the mode. There has been no such legislation under the Constitution, and the statute of 1848 provides only the mode of ascertaining the *quantity*, when that is disputed by the creditor, and for a selection so far as the quantity is in question. There being no other practicable mode of settling the question before sale, we are inclined to the opinion that, whenever the creditor has proceeded so far as to make a levy, either party, the creditor or the householder, may file a bill in equity, setting forth the nature of ·the case, asking that a selection may be made by the householder, should the property be found to be divisible, and that the value may be ascertained by the court, whether divisible or not. The value might then be ascertained, either by directing an issue to a jury for that purpose, or by reference to a commissioner to take proof and report: and, in this manner the rights of both parties might, by the decree of the court, be secured, according to the nature of each particular case.

But, unless this be done, or unless the householder clearly waives all right to a homestead; if the creditor proceeds to sell, the purchaser, in such case, must take upon himself the risk of being able to show, when he claims the property under the sale, that it was not exempt by reason of its excessive value, and that it was not divisible in such manner as to leave a homestead within the prescribed value, which the Constitution secures the right to select: for the debtor, in such case, would, we think, be entitled to set up his rights, and the question of value might be determined, in an action brought to recover the property. — See *Helfenstein v. Cave*, above cited. But courts of law, as constituted in this state, have no process or mode of practice by which such questions can be deter-

mined, as a preliminary to a sale, or a selection and ap-
praisal made in the suit for the recovery of the land by
the purchaser.

When the tract is within the quantity, but exceeds the
value fixed by the Constitution, and is divisible so as to
leave a homestead within that value, the householder can-
not be considered in default, nor held to waive his right
by not selecting, when neither the Constitution nor the
law has provided any mode by which he could complete
a valid selection.

Having disposed of the cases in which no formal selec-
tion by the debtor is necessary to protect the homestead
from forced sale, we come;

*Third:* To the cases in which he must make a se-
lection, so far as any mode is provided, to entitle him to
the exemption.

*Whenever the tract including the homestead exceeds the
quantity limited by the Constitution, a selection by the debt-
or becomes necessary to distinguish that which is exempt
from that which may be sold at the instance of creditors.*

And the debtor, to entitle himself to the exemption of
any part of it, must proceed to select it, so far as the law
has provided a mode of selection; and the fact that no
mode has been provided by which he can make the selec-
tion, as relates to the *value*, will not excuse him from pro-
ceeding with the selection, so far as the mode has been
provided by law. The statute of 1848 makes full and ade-
quate provision for the selection, so far as the question
of *quantity* is concerned, as well as for ascertaining and de-
fining the boundaries. Of this law he must avail him-
self to bring the homestead within the quantity limited
by the Constitution. But when he has proceeded thus far,
he has exhausted the remedy given by the law; and the
quantity so selected, if within that limited by the Consti-
tution, will all remain exempt, though it may exceed the
value limited by the Constitution, until the value shall be

ascertained, and the selection with reference to the value perfected, in a court of equity, in the manner already suggested for other cases involving the question of value only.

As regards this proceeding for the selection of quantity, the third section of the act of 1848 provides that, "whenever a levy shall be made upon the lands or tenements of a householder, whose homestead has not been selected and set apart by metes and bounds, such householder may notify the officer at the time of making such levy, of what he regards as his homestead, with a description thereof, within the limits above prescribed, and the remainder alone shall be subject to sale under such levy." The next section provides for a survey, if the plaintiff is dissatisfied with the quantity selected.

Now, in reference, we suppose, to the words "whose homestead has not been selected and set apart by metes and bounds," we are asked by the first question propounded by the circuit court, as we understand that question, whether a homestead can be regarded as having been selected by the owner and occupant, "so as to enable him to hold it exempt from execution, without a selection in writing, executed, acknowledged and recorded in the manner provided for the execution, acknowledgment and recording of deeds of real estate."

We have already sufficiently indicated our opinion of what may be regarded as a selection under this clause, as one already made, viz.: the selection may be considered as already made and sufficiently defined in all those cases where, as already shown, ownership and occupancy as a homestead in fact, is to be regarded as a selection: or, in other words, where the Constitution does not contemplate selection as a means of bringing it within the limitation, as to quantity and value. The Constitution is entirely silent as to such previous selection, and the statute is silent as to any mode by which it is to be effected. It does not require it to be in writing: it does not authorize

any instrument in evidence of it, to be acknowledged or recorded: and very clearly, if recorded, the record could have no legal effect. — *Cook v. McChristian*, 4 *Cal.* 23. We think, therefore, no writing is necessary as evidence of such previous selection.

A similar answer may be made to the question, (7th,) whether the notice by the debtor to the officer is required to be in writing. No notice in writing is required. It may be in any form which indicates to the officer, with reasonable certainty, the land claimed as a homestead.

The sixth question submitted is, whether the notification to the officer must be made *at the time of the levy*, or whether it may be made within a reasonable time after the debtor has notice of such levy? We are inclined to the opinion that, even if this question rested upon the statute alone, the notification to the officer might be made within a reasonable time after the debtor was notified of the levy. The statute clearly contemplates action on the part of the debtor, in consequence of, and founded upon, the levy; and it could not have contemplated that such action founded upon the levy, could have been taken by the debtor, until he was aware the levy had been made. But if this were not so under the statute alone, before the Constitution, then the Constitution has modified the statute to this extent, at least, if not to the extent of allowing the debtor to select at any time before the sale, or so as not unduly to delay a sale. The Constitution gives the right of selection as an absolute right; it fixes no time within which it is to be made, though from the nature of the case it must contemplate the exercise of the right, so as not unduly to interfere with a sale of the excess. And there may be this difference between the statute and the Constitution: When the statute was passed, there was no constitutional provision on the subject of a homestead, and it was competent for the Legislature to give the exemption on just such terms and conditions as they saw fit

to prescribe. But the absolute right of selection, given by the Constitution, cannot be materially narrowed or abridged by the Legislature.

It will be seen from the foregoing opinion, that further legislation is necessary to secure any benefit of a homestead exemption to a debtor, whose homestead exceeds the value of $1500, and is indivisible, as well as to avoid the expense and delay of a chancery suit to effect a selection of a homestead, where the question is one of value. With this view, and because we deem such legislation essential to secure equality of benefit under the constitutional exemption, we have deemed it our duty to enter upon a more extensive exposition of the present state of the law, than we should have felt justified in doing under other circumstances, in a case like the present.

MARTIN CH. J. and CAMPBELL J. concurred.

MANNING J.:

I concur, except that I do not wish to be understood as expressing an opinion on the question, whether it is not in all cases necessary to claim a homestead to entitle a party to it? — as an answer to that question is not involved in the decision of the case before us.