DYE *v.* MANN.

## Richard Dye and others v. Loomis Mann and others.

It is not necessary either to aver or prove the consideration of an agreement under seal; as the seal itself imports a consideration.

One member of a firm covenanted with the other to pay the debts of the firm, saving the other harmless therefrom. Such a covenant is not one of indemnity merely, but an omission to pay the creditors as their demands became due would constitute a breach of it.

Complainants guaranteed the performance of this covenant, and took from the covenantor mortgage security to pay them all sums they might pay or cause to be paid, arising in any manner from the breach thereof. They filed their bill to foreclose the mortgage, alleging therein that they had "paid on the debts of the firm $1,000, as they were obliged to do by the terms and legal effect" of the covenant, "on account of the default" of the covenantor.  *Held* that this was a sufficient statement that they had paid after their liability accrued, and that it was not necessary to set forth in the bill the particular debts paid.

It makes no difference in such a case that the payment of the debts was made by a part only of the complainants, instead of by all jointly.

On an appeal in Chancery from a hearing on pleadings and proofs, all matters of more form are to be disregarded, if the pleadings are good in substance.

The Constitution secures against creditors a homestead to every family in the State. Not as a personal privilege to be claimed by the debtor, but as an absolute right necessary to the welfare of the household, of which the debtor can not be deprived, if an unmarried man, without some act of his relinquishing the right, or if a married man, without the joint conveyance of himself and wife.

A subsequent mortgagee whose mortgage is executed by both husband and wife may take advantage of the invalidity of a mortgage given by a married man upon his homestead without his wife's signature. Such mortgage by the husband alone is void for all purposes, and not merely as to the homestead interest.

And where bill is filed to foreclose the invalid mortgage, and the subsequent mortgagee is made a party defendant, he may take advantage of the invalidity of the first mortgage by answer, without filing a cross bill.

Where a married man gives a mortgage covering his homestead, without his wife's signature, and the premises are of more than $1,500 value, the mortgage, though void as to a homestead of that value, is good as to the residue. On bill filed to foreclose such a mortgage, the Court ordered a reference to a Commissioner, to set off as a homestead so much of the premises, with the improvements, as was worth $1,500 at the date of the mortgage, including the dwelling house, and as far as practicable such of the outbuildings and other improvements as might be found most essential to the enjoyment of the homestead; to the end that on the coming in and confirmation of the report, the mortgage might be declared void as to the homestead thus set off, and good as to the residue.

*Heard January 13th and 14th.  Decided June 3d.*

Appeal in Chancery from Ionia Circuit.

The bill was filed by Richard Dye, John C. Dexter and Stephen F. Page, against Loomis Mann and James Pattee, and set forth:

That prior to September 5, 1854, Looomis Mann and David Morse had been partners as hardware merchants at Ionia; that on that day they dissolved their copartnership, and Mann, by an instrument under his hand and seal, agreed with Morse to pay all of the indebtedness of the firm, and to save Morse harmless from the payment of said debts; that complainants, on the same day, by an indorsement in writing on said agreement, guaranteed the fulfillment of the same on the part of Mann; that Mann made default in the payment of the partnership debts, whereby complainants became liable to pay large sums of money to the creditors of Mann & Morse, and for the purpose of indemnifying them against loss on account of said liability, Mann executed to them an instrument (given in full in the bill) by which he agreed "to pay to said John C. Dexter, Richard Dye and Stephen F. Page, all sums that they may pay, or cause to be paid, arising in any manner from the breaches or breach" of the instrument the performance of which had been so guaranteed by them. And to secure the performance of this agreement, Mann executed to them a collateral mortgage on certain premises in the village of Ionia County Seat, described in the bill, and containing one-fourth of an acre of land.

The bill further states, that complainants "have paid to the creditors of the said firm of Mann & Morse the sum of one thousand dollars, as they were obliged to do by the terms and legal effect of the guarantee above set forth, on account of the default of the said Loomis Mann; and that, because of the said default, they are still liable to pay large sums of money not yet ascertained." And the bill prays a foreclosure of said mortgage, and a sale of the premises to satisfy the amount so paid by them. Pattee was made a party as a subsequent incumbrancer.

This bill was taken as confessed by Mann. Pattee filed an answer, setting forth, among other things, that he held a mortgage on the premises, given March 25, 1859, by said Mann, and Anna B. Mann his wife, for $1,755, all of which is unpaid; that at the time of the giving of the mortgage to complainant, Mann had a wife and several children, and resided with his family on the premises described in complainants' mortgage, which premises then, and ever since, have constituted Mann's place of residence and homestead, and did not exceed $1,500 in value; and complainant's mortgage was therefore invalid for want of the signature of Mann's wife thereto.

Replication was filed to this answer, and testimony was taken which it is not deemed necessary to state more fully than as given in the opinion.

*Bell & Soule*, for complainants:

The objection that the bill contains no sufficient allegation of payment, should have been taken by special demurrer: — *Hoff. Ch. R.* 121; 7 *Cow.* 143. But the allegation is sufficient as it stands: — 5 *Johns.* 168.

The guaranty of complainants made them primarily liable with Mann for the payment of the debts: — 20 *Johns.* 364. It became their duty to pay them immediately on the default of Mann: — 15 *Wend.* 509; 20 *Johns.* 364; 5 *W. & S.* 440. There being no time fixed for payment, if any debts were due the law required them to pay at once: — 3 *Denio*, 321, 324.

The guaranty sufficiently expresses the consideration: — 4 *Seld.* 207.

Pattee can not claim relief by his answer. If he desires to · have our mortgage set aside as void, or delivered up and cancelled, he must file a cross bill: — *Lube Eq. Pl.* 142, *note; Story Eq. Pl.* § 391 *et seq.;* 2 *Barb. Ch. Pr.* 126; 2 *Mich.* 472.

The exemption of homesteads is for the benefit of the

mortgagor and his wife and family, and they may waive or renounce the same if they choose, and no third party should have the right to interfere: — 4 *Hill,* 467; 3 *Mich.* 448; 28 *Vt.* 541. It is a personal privilege which third persons can not claim or set up: — 22 *Barb.* 656.

But it is claimed that the lot is not such an one as is exempted. It can not be called an agricultural lot, by any correct use of terms, and it is not exempted as a village lot: — 8 *Mich.* 488.

*G. V. N. Lothrop,* for defendant Pattee:

1. The bill is defective. It does not show any legal contract on the part of Mann to assume the debts of Mann & Morse. It discloses no consideration. It appears on the bill as a mere voluntary promise. And if invalid, the obligation of the sureties falls with it: — *Theobald Prin. and Surety,* 2; *Edw. on Bills,* 218.

The liability of complainants on their guaranty (if that was valid) was to *Morse only.* And the contract and mortgage given to them were of indemnity against this liability. But the bill shows nothing paid on the liability *to Morse,* nor that he ever set up any claim, or requested any money to be paid to any one.

The statement in the bill that complainants have paid $1,000 to creditors of Mann & Morse, is not sufficiently certain. And besides, the payment appears to have been entirely voluntary — the bill showing no liability to the creditors, nor even a request to pay, from either Mann or Morse.

The original agreement from Mann to Morse, is one of indemnity merely. No time was fixed when the debts were to be paid. Mann was only to pay *so as to save Morse harmless.* But if it is to be construed as an agreement to pay absolutely, it must be either on request of Morse, or when the creditors required payment from Morse, or in a reasonable time. The bill is defective in not showing a breach of either of these terms.

2. The proofs do not make complainants' case any better. The payment made on the debts of Mann & Morse was by Dye & Page only. This might give them a good personal claim against Mann, but none under the mortgage.

3. The mortgage upon Mann's homestead, without the signature of the wife, was a nullity, not only as the wife but as to the defendent: — 7 *Mich.* 506; 5 *Wis.* 534; 2 *Gray*, 384; 5 *Cal.* 504; 6 *Cal.* 71; 7 *Cal.* 342; 8 *Cal.* 66; 9 *Iowa*, 509.

MANNING J.:

Three principal objections are made to the decree of the Circuit Court by the defendant Pattee, the appellant.

I. That the bill of complaint makes no case.

1. Because it does not state any consideration for the agreement between Mann & Morse of the 5th September, 1854, that was guaranteed by complainants.

The bill states the agreement is in writing, and under the hand and seal of Mann. That is sufficient. The seal imports a consideration, and dispenses with a statement of the consideration in the bill, as well as proof of it on the hearing.

2. Because the liability of complainants on their guaranty was to Morse only; and the agreement of 26th February, 1859, between Mann and complainants, which the mortgage was given to secure, was one of indemnity against that liability.

By the agreement of September, 1854, Mann covenants to pay all the debts then due and owing to the firm of Mann & Morse—saving Morse harmless. The covenant is to pay the debts of Mann & Morse, as well as to indemnify Morse against the payment. It contains a present absolute undertaking on the part of Mann, as well as a future contingent one, on either of which an action would lie in case of a breach. An omission to pay the creditors of Mann & Morse, as their demands became due, would be

as clear a breach of the covenant as an omission to pay Morse after he had been compelled to pay them. In either case Morse would have a right of action on the covenant. The damages, is is true, in an action for not paying would be nominal; but still the action would lie.

The guaranty is unconditional. The liability of the guarantors is consequently co-extensive with that of their principal. What gives a right of action against him at the same time gives a right of action against them. What it is his duty to do as covenantor, it is theirs to do as guarantors. And by the agreement of 26th February, 1859, Mann not only undertakes to save them harmless against payments they should be liable to make to Morse, but also to pay them " all sums that they may pay, or cause to be paid, arising in any manner from the breaches or breach" of the agreement guaranteed by them. Language broad enough to include, and in fact including, and we have no doubt so intended by Mann, all payments made by them under their guaranty, whether to Morse of a debt that had been paid by him, or to a creditor of the firm, of a debt which Mann was bound to but had not paid.

3. Because the averment of payment in the bill by complainants is bad for uncertainty.

The averment is in the following words: " And your orators further show, that they have paid to the creditors of the said firm of Mann & Morse the sum of one thousand dollars, as they were obliged to do by the terms and legal effect of the agreement above set forth, on account of the default of the said Loomis Mann," &c. We think the averment is sufficient. It is as certain as the covenant to pay; which is to pay the debts of the firm generally, without naming particular creditors. See *Hughes v. Smith*, 5 *Johns.* 168; *Shum v. Farrington*, 1 *B. & P.* 640; *Barton v. Webb*, 8 *T. R.* 459. Nor is the time of payment material, provided it was after the liability to pay accrued. This is sufficiently stated in substance, if

not in form, in the averment that it was made on account of *the default of the said Loomis Mann.* On an appeal from a hearing on pleadings and proofs all matters of mere form are to be disregarded, if the pleadings are good in substance.

II. The second objection is that payment was made by two of complainants, and not by all of them. Their liability under their guaranty was a joint and not a several liability, and payment by any one or more of them was payment by all. Had the mortgage been given to secure them against a several liability, the mortgagees not paying would in equity be trustees for those who had.

III. The third and last objection is that the complainant's mortgage—being of a homestead—is void in consequence of the wife of the mortgagor not having united with him in giving it.

The state Constitution provides that a mortgage or other alienation of the homestead therein mentioned, "by the owner thereof, if a married man, shall not be valid without the signature of the wife to the same." *Art.* 16, § 2. In *Beecher v. Baldy*, 7 *Mich.* 488, this provision in the Constitution came under discussion, and was fully considered by the Court. And in speaking of the waiver by a debtor of his right to a homestead, the following language is used: "And when the householder is a married man, he can not, probably, by any waiver, consent to a sale on execution, so as to render the sale valid without the consent of his wife. For, in such case, the validity of the sale would rest upon his consent in the same manner as if he had conveyed by deed; and if deeded by him under the like circumstances, the deed would be void, even as to him, without the signature of the wife." The effect of a conveyance by the husband was not before the Court for decision in that case; but, we are still of opinion, that the language quoted is a correct exposition of the Constitution, so far as it goes—wishing in no respect to amend

10 Mich.—T.

it, except to strike out the word "probably" in the first sentence.

The Constitution—whatever may have been the intention, of the pre-existing statute — we have no doubt was intended to secure against creditors a homestead to every family in the State. Not as a personal privilege of the debtor which, to be made effectual, would have to be claimed by him — placing him in an attitude to have his motives suspected, but as an absolute right, necessary to the welfare of the household, of which the debtor should not be deprived, if an unmarried man, without some act of his relinquishing his right; or, if a married man, without, the joint conveyance of himself and wife.

To the argument that a conveyance by the husband alone should be held void only as to the homestead interest, and good for the remaining interest in the property, it is a sufficient reply to say, that the Constitution makes no such distinction, but declares such conveyance shall not be valid; that is, shall be void. If the language would admit of such a construction, it could not be adopted without coming in conflict with the policy of the provision itself, and robbing that policy, in part, of its beneficence. A homestead thus incumbered would have no exchangeable value; and could not be used to procure another, in the same or at a different place, should the interest of the family require it. The Legislature have taken a more enlarged view of the Constitution, and provided by statute that when the homestead exceeds $1,500 in value, and is sold on execution, that amount shall be paid the debtor out of the proceeds of the sale, and be exempt from execution for one year thereafter — to purchase, it is to be presumed, a new homestead with : — *Laws* 1861, *p.* 541, § 3.

The mortgage, though void as to the homestead, is good for any excess over and above the homestead.

It appears from the proofs in the case, that the mortgaged premises consist of a quarter of an acre of land,

with a dwelling house, barn and other outbuildings thereon, worth, according to the testimony of Mann, $2,000, and of another witness $1,800, at the time the mortgage was given.

Whether the premises are located within the village of Ionia, or outside of the village limits, is of no importance, as the value of the homestead can in no case exceed $1,500, and there is no evidence showing they exceed a village lot if within the village limits.

It was not necessary for defendant to file a cross bill to make the defense he sets up in his answer. He asks no affirmative relief against complainants, nor is he seeking to foreclose his own mortgage.

The decree of the Circuit Court must be reversed, with costs, and a reference be made to a Circuit Court Commissioner, to set off as a homestead, if the same can be done, so much of the lot with the improvements thereon as was worth $1,500 cash, on the 26th February, 1859, including the whole of the dwelling house, and, as far as may be found practicable, such of the outbuildings and other improvements as may be found most essential to the enjoyment of the homestead; to the end that on the coming in and confirmation of his report, a decree may be entered declaring the mortgage void as to the homestead so ascertained and set off, and good for the rest of the mortgaged premises, and a sale thereof if not redeemed, &c.

MARTIN CH. J. and CHRISTIANCY J. concurred.

CAMPBELL J.:

I concur in the result arrived at by my brother Manning. I think, however, that the bill is very defective in not alleging what persons and what debts against the partnership were paid, and I have had some difficulty in holding the allegations sufficient for any purpose. As there is no doubt, however, concerning the facts, and as the parties were

mutually desirous of having the other points decided, I shall concur in the reversal of the decree, and the entry of one in accordance with the views expressed by my brother Manning.