ALLEN *v.* CRANE.

HOMESTEADS—LIABILITIES ENFORCEABLE—JUDGMENT FOR TORT.
Complainant obtained a judgment for $1,500 against defendant husband for fraudulent representations in the sale of goods for $2,500 and execution thereon was returned unsatisfied. On a bill to subject defendants' homestead to the payment of the judgment, upon the claim that defendant invested therein the money fraudulently obtained from claimant and moved into the house that he might claim it as a homestead as a part of his scheme to defraud complainant, it appeared that defendant bought the place upon contract for $2,550 two years before the transaction with complainant, paid $557 thereon, principally with money borrowed from his wife, and moved into the house soon after buying it, and that at the time of filing the bill there was still due $1,500 upon the contract. *Held,* that the bill was properly dismissed.

Appeal from Kalamazoo; Adams, J. Submitted January 15, 1908. (Docket No. 55.) Decided May 1, 1908.

Bill by O. LeGrand Allen against Elliott H. Crane and others to subject certain real estate claimed as a homestead to the payment of a judgment. From a decree dismissing the bill, complainant appeals. Affirmed.

*William E. Ware,* for complainant.

*Harry C. Howard,* for defendants Crane.

MOORE, J. This bill of complaint was filed to subject a house and lot occupied and claimed as their homestead by defendants Crane and wife, to the payment of a judgment obtained by the complainant against defendant Elliott H. Crane.

August 16, 1901, defendant Elliott H. Crane contracted with one Richard Hope for the purchase of the house and premises in question, for which he was to pay $2,550 in stated payments. Mrs. Crane as well as her husband

signed the contract, though her name did not appear in the body thereof. Sometime before negotiating for the property Mr. Crane borrowed $500 of his wife, and, out of this money, paid at the date of the contract $400. On February 16, 1902, he paid $50 and September 16, 1902, $127.50, making a total of $577.50 paid by him on the contract previous to April 25, 1903, and before he had any dealings with the complainant.

Defendants Crane and wife moved into the house soon after the date of the contract and have ever since lived there, claiming it as their homestead. In April, 1903, complainant paid Mr. Crane $2,500 as the purchase price of certain personal property, inventions and secret processes which defendant Elliott H. Crane claimed to have discovered. In the following August complainant, claiming there had been fraud and deceit practiced upon him by the defendant Elliott H. Crane, commenced suit against him by declaration in tort to recover his damages. The defendant pleaded the general issue, the case was tried and resulted in a judgment in complainant's favor of $1,500 and costs.

Execution upon the judgment was issued, delivered to the sheriff and by him returned nulla bona, and thereupon an alias execution was issued July 19, 1904, and on the same day levied upon the premises in question, and October 22, 1904, complainant filed this bill to subject the premises to the satisfaction of the judgment and the repayment to him of the money fraudulently obtained from him by the defendant Crane.

The bill alleges that defendant Elliott H. Crane invested the money fraudulently obtained from the complainant in the premises and moved into the house with his family that he might claim it as a homestead, in furtherance of his scheme to defraud the complainant and prevent him from having it used or applied to satisfy the judgment. It recites the contract and offers to pay the balance due thereon when determined.

The defendants Crane answered. They admit the judg-

ment, deny the fraud, claim the premises as exempt from execution, deny having any property liable to execution, admit the contract and assert there is due upon it $1,500. Defendant Adam Haas did not appear and his default was entered. At the time of the last payment there was due $1,502.40 and that sum, with interest, still remains unpaid upon the contract. The cause was heard in open court. The bill was dismissed. The case is brought here by appeal.

It is the claim of complainant that:

" 'A bill may be filed for the double purpose of aiding an execution and of reaching property not subject thereto, based on a return of execution unsatisfied, and the issue and levy of an alias writ.' *Wilson* v. *Addison*, 127 Mich. 680, and cases cited.

" By electing to take a judgment at law against defendant Crane, complainant is not estopped from maintaining a suit in equity where the proceedings at law prove inadequate to give him the relief to which he would have been entitled had he brought his suit in equity in the first instance. *Matthews* v. *Forslund*, 112 Mich. 591. * * *

" The judgment merely determined the amount fraudulently obtained from complainant and shows that the title to that money did not pass to defendant Crane, but remained in complainant Allen. Defendant Crane, therefore, became a trustee ex maleficio for the complainant as to that money. * * *

" Where the fiduciary uses the trust fund together with his own funds in payment for land, a trust results pro tanto, and the cestui que trust is not bound to take the land, but may hold the trustee personally liable for the fund misappropriated and have a lien upon the land for its repayment. 15 Am. & Eng. Enc. Law (2d Ed.), foot page 1182; *Pierce* v. *Holzer*, 65 Mich. 263."

It is probable that the above statements are correct statements of the law but they do not meet the questions raised by the record. In the case of *Pierce* v. *Holzer*, supra, the administratrix of an estate used funds which belonged to the estate to purchase a house and lot which she claimed as a homestead. The homestead came into

being as a result of a misappropriation of funds. In the case before us the homestead was in existence two years before complainant had any dealings with defendant Elliott H. Crane. The wife never had any dealings with him and there is no claim that she ever practiced any fraud upon him or had any knowledge of a fraud. When complainant learned he had been defrauded he did not attempt to rescind the contract and place defendant in statu quo, but retained what he had obtained and sued for damages. The jury gave him a verdict for $1,500, while he had paid to Mr. Crane $2,500, thereby deciding that Mr. Crane obtained $1,000 from complainant which he was entitled to keep. The proof on the part of Mr. Crane is that he received a royalty of $25 a month.

" I am an embalmer and a taxidermist, I am a naturalist, I am an archæologist, a collector of curios, a dealer in curios now and then, here and there, an exporter, and I am an explorer of mounds, and I do a little lecturing once in a while. This royalty that is paid to me is on account of a chemical discovery of my own.

" *Q.* As to the collection at your house that you have spoken of, will you explain briefly what sort of a collection that is ?

"*A.* I have collected in minerals and geological specimens of every kind, and things of mineralogy all that you can think of, and I have got some birds. I have got embalmed specimens and birds that I have skinned and stuffed and others that were recently mounted in both ways. I have got more stuffed than anything else. I got some of these in this country and some from foreign countries."

He also testified that he had a small revenue from these sources. It is not disputed that the $500 he borrowed from his wife was money that came to her from her relatives. It was afterwards repaid to her from the money obtained of complainant. Mr. Crane testified that he never kept the money he received from complainant separate from his other funds, but that he used it as he needed it. It has already appeared that there is upwards of $1,-500 due upon the land contract. Had the $1,000 obtained

by defendant Crane from complainant, which the jury said he was entitled to, all been paid upon the contract, it would have left only the interest and taxes to be provided from other sources.

As long ago as *McKee* v. *Wilcox*, 11 Mich. 358, it was said:

"The Constitution in giving a homestead as a right does not confine it to any particular estate or interest whatever in the land. Art. 16, § 2, and the statute secures it to a person owning and occupying a house on land not his own. 2 Comp. Laws 1857, § 4500."

And it was held that a homestead may be claimed in land of which a party is in possession under contract to purchase. See, also, *Lozo* v. *Sutherland*, 38 Mich. 168; *Allen* v. *Cadwell*, 55 Mich. 8; *Stanton* v. *Hitchcock*, 64 Mich. 316.

In *Riggs* v. *Sterling*, 60 Mich. 643, the following language is used:

"The homestead exemption, as established by the Constitution and laws of this State, is not alone for the husband, and his protection, but for the benefit of the wife and children as well. Const. art. 16, §§ 2, 3, 4; 2 How. Stat. chap. 267; *People* v. *Plumsted*, 2 Mich. 471; *Beecher* v. *Baldy*, 7 Mich. 488; *Dye* v. *Mann*, 10 Mich. 297; *King* v. *Moore*, 10 Mich. 538; *Snyder* v. *People*, 26 Mich. 110; *Comstock* v. *Comstock*, 27 Mich. 97; *Showers* v. *Robinson*, 43 Mich. 502; *Sherrid* v. *Southwick*, 43 Mich. 515; *Penniman* v. *Perce*, 9 Mich. 509; *Dyson* v. *Sheley*, 11 Mich. 527.

"The homestead exemption, as it now exists, is not only a privilege conferred (*Chamberlain* v. *Lyell*, 3 Mich. 458), but, under the Constitution, it is an absolute right. 'It was intended to secure against creditors a home, and, to a certain extent, the means of support, to every family in the State.' *Dye* v. *Mann*, 10 Mich. 297; *McKee* v. *Wilcox*, 11 Mich. 358. * * *

"When such homestead, in amount within the constitutional limit, is once established by such election, selection, and occupancy, the Constitution is a positive prohibition against levy and sale by the owner's creditors, unless it exceeds $1,500 in value. *Beecher* v. *Baldy*, supra; *Drake* v. *Kinsell*, 38 Mich. 232. * * *

"No waiver of the homestead right by the husband can affect a wife's interest therein. *Beecher* v. *Baldy*, 7 Mich. 506; *Williams* v. *Starr*, 5 Wis. 534; *Ring* v. *Burt*, 17 Mich. 465; *First Nat. Bank of Constantine* v. *Jacobs*, 50 Mich. 340; neither can the abandonment or waiver of the homestead right or homestead by one entitled to enjoy the same affect the interest of any other equally entitled thereto. *Showers* v. *Robinson*, 43 Mich. 513; *Griffin* v. *Johnson*, 37 Mich. 87, 92; *Allen* v. *Shields*, 72 N. C. 504."

See, also, *Maatta* v. *Kippola*, 102 Mich. 116; *Sammon* v. *Wood*, 107 Mich. 506; *Gadsby* v. *Monroe*, 115 Mich. 282; *Rogers* v. *Day*, 115 Mich. 664.

In *Mertz* v. *Berry*, 101 Mich. 32 (24 L. R. A. 789), it is held that article 16, § 2, of the Constitution, must be construed as exempting the homestead from execution and sale upon all judgments whether founded in tort or in contract.

The decree is affirmed, with costs.

GRANT, C. J., and BLAIR, CARPENTER, and McALVAY, JJ., concurred.