## Robert Davis vs. Lorenzo J. Rider and Others.

A debtor assigned to his creditor certain shares of railroad stock, and at the same time gave a note for the debt, reciting therein that, if the said debt and interest is not paid at maturity, the railroad "stock hereby assigned to secure the payment aforesaid is to be deemed and taken as forfeit for the above payment." This constituted, in legal effect, a chattel mortgage of the stock, under which the holder of the note was entitled to possession of the stock certificates.

The creditor subsequently assigned to a third person the said note and stock security for the purchase-price of lands bought by him, and gave a mortgage on the lands in the usual form, to secure the performance of the condition of said note. The note being past due and unpaid, the mortgagee filed his bill in Chancery to foreclose the mortgage on the lands;—*Held*, That such mortgage, in the hands [of the mortgagee; was an additional collateral security to that of the stock, and, as it did not, in terms or by implication, require the mortgagee to resort, first, to his other collaterals, there was no rule of law which would compel him to do so in the absence of such an agreement.

In defense to the bill to foreclose such mortgage, it was alleged that, subsequent to the giving of the same, the complainant was anxious to obtain the stock, and agreed with the maker of the note, who still had possession of the certificates, that they should be deposited with a third person, and that, on such deposit being made, complainant should receive such deposit in satisfaction of his mortgage, and discharge the same, but should give up the stock if the note was paid before due; that such deposit was made accordingly; and that, after the note became due, complainant demanded and received of such third person the certificates of stock, but refused to discharge the mortgage;—*Held*, That the alleged agreement was without consideration, as complainant was already, under his assignment, entitled as of right to possession of such certificates.

Where one holding property in mortgage converts it to his own use, the mortgage debt is thereby satisfied to the extent only of the value of the property.

*Heard June 8th and 9th. Decided July 15th.*

Appeal from Jackson Circuit in Chancery.

The bill in this case was filed to foreclose a mortgage given by the defendant Lorenzo J. Rider to the complainant, dated the 8th day of March, 1855. The bill alleged that the mortgage was given upon certain premises in the village of Grass Lake, in the county of Jackson, to secure the purchase-money of said premises, and was upon the following condition: "Provided always, and these presents are upon this express condition, that if the said party of the first part, pay to the said party of the second part, the sum of $792.62, or cause the same to be done according to the tenor and effect of a certain note or agreement made by one H. B. George, of the city of Cleveland, Ohio, bearing date, Cleveland, October 7th, 1854, of which the following is a copy, to wit: 'One year from date, for value received, I promise to pay Lorenzo J. Rider, or bearer, $785.87, with interest at ten per cent.; and if said money and interest is not paid at maturity, the ten shares of capital stock of the Peterboro and Shirley Railroad, hereby assigned to secure the payment aforesaid, is to be deemed and taken as forfeit for the above payment. Interest semi-annually.' And which assignment is in the words and figures following, to wit: 'For and in consideration of one thousand dollars rec'd of Lorenzo J. Rider, to my full satisfaction, I do hereby sell, transfer and convey to him, the said Rider, ten shares of the capital stock of the Peterboro and Shirley Railroad Company to his own use and benefit, which said stock has all been paid in full to the full amount of one hundred dollars per share, and which said railroad is in operation,' (signed by H. B. George) — and which has been by said Lorenzo J. Rider sold to said Robert Davis. Now, if the said H. B. George shall well and truly pay, or cause to be paid, according to the tenor and effect of the agreement above named, bearing even date herewith, executed by said Lorenzo J. Rider by assignment to the said party of the second part, then these presents and all liability hereon shall cease and be null and void; but in

case of non-payment of the said sum of money, and failure to produce and surrender proper certificates of the stocks as aforesaid, or any part thereof, then and in such case," &c.— going on with the usual power of sale.

The bill also set forth the note of George and the assignment of stock, copies of which are contained in the foregoing condition, and also the assignment of Rider to Davis, as follows: "In consideration of $792.62 rec'd of Robert Davis, I hereby assign and sell to him the above claim, to his own use and benefit; and to secure the payment or performance according to the tenor and effect thereof, I have this day executed a mortgage on a certain lot in Grass Lake, this 8th day of March, A. D. 1855. LORENZO J. RIDER."

The mortgage was duly acknowledged on the 8th day of March, A. D. 1855, and recorded on the 7th day of June, of the same year.

The bill also charged, that, on the said 8th day of March, 1855, the said shares of stock were valueless; that the said corporation, if in existence, had no such railroad in operation as represented by Rider, which facts Rider well knew at the time of such assignment; that said shares were assigned to complainant with intention to cheat and defraud him out of his premises; and that Rider, at the time of the assignment, represented the stock to be of the value of one hundred dollars per share, with intent to defraud complainant.

The remainder of the bill is in the usual form of a foreclosure bill.

To this bill the defendant George demurred, and the defendants Rider and Wilson answered. The answer admits that Rider purchased the premises, and paid in part for the same; admits the agreement of George as set forth in the bill, and the assignment from Rider to complainant; but denies that complainant was to have the stock and the right to enforce payment of the $785.87 in case George failed to pay; admits the making of the mortgage; denies that defendant Rider knew that the stock was valueless, or that it

was so in fact, or is so now, and alleges that the corporation existed and was in operation March 8th, 1855; denies that the assignment made by Rider to complainant was so made with intent to defraud the complainant; denies that Rider represented the stock to be good, or at par, or of any particular value, with intent to defraud complainant.

The answer then proceeds to set up as a defense, That on or about April 13th, 1855, the complainant was anxious to obtain the stock, and proposed to defendant George to have him deliver said shares to him in full payment of his (George's) contract with Rider; that George declined doing this, and it was thereupon agreed between complainant and George that the certificates of stock should be deposited, at Grass Lake, with Zera Patterson, with the understanding and agreement by and between George and complainant, that on such deposit being made by said George, the said complainant should thereupon receive said deposit in full payment and satisfaction of said mortgage given by Rider to complainant, and should execute a satisfaction to discharge the same of record, and that if George should not pay his note before due, then Patterson was to deliver the stock to complainant; that George so deposited the stock, and complainant took the mortgage, and started to write a discharge, but on some one saying it was necessary some officer should be present, did not do it, but agreed to do it; that George failed to pay the money, and complainant demanded and received the stock; that in August, 1855, Rider requested complainant to discharge the mortgage, but he refused, claiming he could foreclose the same; that Rider then demanded the shares of stock, and proposed to give the complainant other securities in their place, or raise the cash, or pay other property, or leave the matter to others; which complainant declined to do. And defendants claim that the mortgage was thus paid and satisfied; that Rider was prevented from deriving any benefit from the stock; and they allege that George has since become insolvent.

Replication having been filed to this answer, and the various papers set forth in the pleadings having been proved, oral evidence was taken as follows:

O. L. Rider, a brother of L. J. Rider, testified on behalf of defendants, That at the time of the transfer of the property by complainant to defendant Rider, the deed was deposited with the witness at the request of complainant, and complainant was to keep the mortgage until he should write to the defendant George, to see if George would place the stocks in some one's hands in the immediate vicinity of Grass Lake. The reason assigned by complainant for this was, that it would be unnecessary to record the mortgage if George placed the stocks where they could be reached. That witness kept the deed until the first of June following— until after George came to Grass Lake. That complainant and George then and there, in the presence of witness, made an arrangement with respect to the stocks and note as follows: That George should deposit the stocks in the hands of Zera Patterson, to secure to complainant the payment of the note he had received against George, and if George did not pay the note when it was due, he forfeited the stocks; Patterson was then to deliver the stocks to complainant, which complainant was to receive as payment of the note. They said the object of leaving the stocks with Patterson, was to leave the security which George had given (the stocks) for the payment of the note, and that that should release the mortgage which Rider had given complainant, and clear George entirely from defendant Rider; that the matter should be left exclusively between complainant and George. George said that Rider had not used him well, and had agreed not to sell the note; he also said that there was a half share more of the stocks than the note called for, but it was undivided and he would have to leave it all; that he intended to redeem them; if he did not pay the money on the day the note was due, the stocks were forfeited to complainant, and if the stocks were forfeited they should be re-

ceived by complainant in payment of the note. In the same conversation, George said that he had deposited the stocks at the request of complainant. This was in the presence of complainant. He said he would not deposit the stocks unless in payment of the note, and that the mortgage of Rider to complainant should be released. He said he and complainant had been trying to write a proper discharge or receipt for the mortgage; that they did not know how to do it, and had agreed to leave it until defendant Rider came to Grass Lake, and let him attend to it. Patterson then came, and the stocks were placed in his hands. One of the parties then stated to Patterson the arrangement. Patterson asked what the object was in placing the stocks in his hands. They said the object was to leave the stocks as called for by the note, to be forfeited if George did not pay the note; then Patterson was to hand them over to complainant, and he was to receive them in payment of the note, which was to satisfy the mortgage given by Rider to complainant. It was then said that the mortgage was to be discharged at any time when the defendant Rider should come to Grass Lake and attend to it.

Further evidence, to establish this arrangement, was adduced on the part of the defendants from this witness, and also from Milton L. Rider and Charles E. Lord.

Zera Patterson testified to the papers having been deposited with him, as stated in the answer, and that he kept them until a few days after the George note became due, and then delivered them to the complainant at his request. With respect to the arrangement at the time they were left, the witness said: "I think O. L. Rider said to me they were going to let Davis have a note, and some papers to secure the payment of the note when it was due, and wanted I should hold them until George paid the note and took the security; or if it remained in my hands till it was due, then I was to deliver the note to Davis, and the security, too; at the same time George remarked that he should be there

before it was due, and take it up, as he would not lose the security. There was something said about leaving it in my hands, as they did not want the note and security both left in Davis's hands. I remember nothing now which would materially qualify this statement. I remember of nothing Davis said, except that he preferred to leave the papers with me. It was said to me, if George came and paid up the note I was to deliver up to him both the note and stocks, and if he did not, I was to deliver the note and stocks to Davis. I do n't remember as anything was said about the discharge of any mortgage Davis held against Rider. Did not hear anything said about it there. I do n't recollect as there was anything said that day in my hearing about any mortgage; there might have been. I know there was nothing said about any mortgage in the condition upon which the papers were left with me. I took particular pains as to what was said to me in regard to the condition upon which the papers were left with me. They did not, in my presence, make any agreement as to the discharge of the mortgage, as I heard. I do n't know as there was anything said as to what Davis was to do with the note when he received it. The reason George gave why he should pay the note before it became due, was that he did not want to leave the security, as the security was more in amount than the note. George said he was a stranger to Davis, and he wanted him to feel abundantly secure in regard to the note. I charged my mind more as to the condition upon which the papers were left with me than as to the rest of the conversation."

Testimony was also adduced on the part of the complainant, to prove that the stock was worthless in market in March, 1855, and that but ten miles of the railroad were then in operation.

On the hearing below, the Court dismissed the bill with costs, and complainant appealed to this Court.

*A. Blair,* for complainant:

1. The transaction was a simple mortgaging of the stock by George to secure his note, and of the land by Rider for the same purpose. The words "forfeit for said payment" do not indicate anything but a mortgage.—*Langdon vs. Buel,* 9 *Wend.* 80; *Clark vs. Henry,* 2 *Cow.* 324; 1 *Pars. on Cont.* 452. Every chattel mortgage is a sale upon condition; and, on condition broken, the property is forfeited, and passes to the mortgagee.—*Tannahill vs. Tuttle,* 3 *Mich.* 104; *Thurber vs. Jewett, Ibid.* 295. But it does not follow that, because the property vests in the mortgagee, therefore the debt is satisfied. The property pays the debt if of sufficient value, otherwise not.—*Case vs. Boughton,* 11 *Wend.* 109; *Charter vs. Stevens,* 3 *Denio,* 33; *Spencer vs. Harford,* 4 *Wend.* 384, 385.

2. The principal defense set up in the answer is, that the complainant agreed with defendant George, to receive the stock in discharge of the mortgage given by Rider.

Upon this point the proofs are conflicting. But it is a sufficient answer to this, that if such agreement was made, it was wholly without consideration. The complainant having taken this mortgage to secure the note and guaranties, was to surrender it *for nothing absolutely.* The only pretence of a consideration is that he was to get possession of the stock after forfeit, which he had already paid for, and had the assignment, and was entitled to have immediate possession of.— *Holridge vs. Gillispie,* 2 *Johns. Ch.* 34. Besides, the stocks having been originally mortgaged, the Court will not allow the transaction to be turned into a sale by any subsequent agreement of the parties; the rule of "Once a mortgage always a mortgage," is entirely without exception. The Court of Chancery has always been careful to mantain this rule.—*Clark vs. Henry,* 2 *Cow.* 324; *Holridge vs. Gillispie,* 2 *Johns. Ch.* 30, 34; *Slee vs. President &c.* 1 *Paige,* 48, 56.

3. The whole transaction in regard to the stock was a

fraud upon the complainant. This is apparent from the whole case. Fraud will often be presumed from circumstances in equity; such as the relation and situation of the parties, want of consideration, and the like.—*Jackson vs. King*, 4 *Cow.* 220, 221; *Dunn vs. Chambers*, 4 *Barb.* 376, 379, 380; 1 *Story Eq. Juris.* §§ 244 to 250; 1 *Lead. Cas. in Eq.* 461, 462; *Osgood vs. Franklin*, 2 *Johns. Ch.* 23, 24.

4. If there is any doubt that the stock is valueless, a decree can be made to sell it, or dispose of it otherwise.

*Wood & Livermore*, for defendants:

Davis having agreed to receive the George note in payment of the balance due for the premises, provided the stocks were delivered, and the stocks having been delivered, and Davis having received them absolutely as payment, in pursuance of his agreement, can not now enforce the mortgage.— *Whitbeck vs. Van Ness*, 11 *Johns.* 409; *Murray vs. Gouverneur*, 2 *Johns. Cas.* 438; *Gardner vs. Gorham*, 1 *Doug. Mich.* 510; *Porter vs. Tolcott*, 1 *Cow.* 383; *Wilson vs. Foree*, 6 *Johns.* 111, *Note* "a"; *Tobey vs. Barber*, 5 *Johns.* 68; 7 *Johns.* 311, *Note* "a." These cases recognize the general principle that in the absence of any misrepresentations, where the party agrees to take such paper in payment for property, both law and equity sustain such agreement. Davis can not sustain an action against George, because it was agreed that the delivery of the stock was to satisfy the note. And the note being satisfied, without any other special agreement the mortgage is satisfied.

The Court will not undertake the guardianship of adults (*Conway's Exrs. vs. Alexander*, 7 *Cranch*, 218); nor relieve Davis from the consequences of his own folly (2 *Pars. on Cont.* 270); nor allow the rescinding of contracts even where the party has the right, without restoring the other party to the same condition he was in before (2 *Pars. on Cont.* 277), which can not be done in this case, because Davis has accepted the stocks in payment of the note. This was a

waiver of complainant's rights, provided there was fraud, which there was not. — 2 *Pars. on Cont.* 278, 279.

CAMPBELL J.:

This was a bill filed to foreclose a mortgage. On October 7th, 1854, George executed to Rider a promissory note, of which the following is a copy: "One year from date, for value received, I promise to pay Lorenzo J. Rider, or bearer, $785.87, with interest at ten per cent.; and if said money and interest is not paid at maturity, the ten shares of capital stock of the Peterboro and Shirley Railroad, hereby assigned to secure the payment aforesaid, is to be deemed and taken as forfeit. Interest semi-annually." Accompanying this note was an assignment of the stock, reciting that the stock was full paid, and the railroad in operation. March 8th, 1855, Lorenzo J. Rider purchased of complainant certain real estate, and, to secure payment of part of the purchase-money, assigned the above-mentioned note and stock security given him by George, and gave a mortgage on the purchased premises, in the usual form, to secure the performance of it. Upon a bill to foreclose this, complainant set up these facts and charges: That the stock was valueless, the road not in operation, and that Rider, knowing the facts, assigned the securities with a fraudulent design. The defense set up was that, subsequent to the execution of the mortgage, the complainant agreed that, in consideration of the depositing by George of the mortgaged railroad stock in the hands of some person at Grass Lake (where complainant lived), to be delivered to said complainant in case George failed to pay the note, such deposit should be in satisfaction of the mortgage; that the stock was so deposited with one Patterson, with whom the note was also left, and that, upon the maturity and non-payment of the note, the papers were handed over to complainant. That Rider offered to pay the note if complainant would assign it and the stock back to him, but complainant refused.

DAVIS vs. RIDER.

The testimony shows very clearly that the railroad stock was entirely worthless. Considerable testimony appears in the case of a somewhat conflicting character. As Zera Patterson's evidence gives a full history of the transaction in controversy, and as he was the person, required as the depository of both parties, to act upon the agreement, and to understand it, we are disposed to place more confidence in his statement than in the somewhat differing accounts of the relatives of the defendants, and of those persons who were casual listeners and took no part in the affair. In the view we take of the whole case, it makes, however, very little difference whose accounts we receive. It appears that shortly after the execution of Rider's mortgage to complainant, George deposited with Patterson the stocks which he had previously mortgaged, and Davis deposited the original securities signed by George, so that George might take up the note upon paying it; and if he did not pay it Davis was to receive the securities. Patterson testifies that he knew nothing of any agreement that the Rider mortgage should be discharged. It appears that subsequently, and before the maturity of the note, Rider endeavored to make some arrangement with Davis to take up the note, by turning out property; and some witnesses testify that he proposed to pay the amount in money, and take back the securities, but that Davis declined.

In order to understand the precise position of affairs, it is necessary to review them from the outset. The security given upon the railroad stock by George was, both in form and legal effect, a mere chattel mortgage of the stock. Under this, the holder of the note to which it was collateral was entitled to the possession of the certificates of stock. Without such possession, the registered holder could transfer a clear title to any third person, and wholly defeat the mortgage. And the statute of frauds requires a transfer of possession as against third persons. The mortgage given by Rider was an additional collateral security in the hands of

Davis, but it did not, in terms or by implication, compel him to resort first to his other collaterals. And there is no rule of law which would compel him to do so in the absence of such an agreement.

When George proposed or agreed to leave the securities with Patterson, there was nothing in the arrangement in regard to the railroad stock, which differed in any degree from the already existing chattel mortgage in Davis's hands. The deposit was in the same terms, and for the same purpose, with the chattel mortgage. No new security was assigned, and no new credit was given. George had no right to require new terms as a condition of depositing the stock, for it was already his duty to give that up into the possession of his mortgagee. And his thus depositing them to secure the existing debt, was, in effect, a mere repetition of the original transaction in all its legal bearings. There is, therefore, strong reason to doubt whether it amounted, or was intended to amount, to a new arrangement. Nothing in Patterson's testimony would so make it, and the probabilities are all against it.

But whether new, or a mere completion of the old arrangement, it could not have the effect of discharging the Rider mortgage. It was no transaction with a principal whereby a surety could be discharged, because no new time was given, no new terms were imposed, and Rider assented to it. We think the weight of evidence decidedly preponderates against the existence of any agreement to discharge it. Patterson, who, of all others, ought to remember the facts, heard nothing of it. There was every reason for discharging it on the spot, if to be discharged at all, and no reason whatever for delaying the discharge. The mortgage was not then recorded, and needed no formal release, and then was the proper time to cancel it. No objection appears to have been made to its registry, and the fact that Rider was afterwards disposed to arrange it himself, is hardly consistent with any settled understanding that it had been agreed that it should be discharged in his favor. And there was no consideration to support any such agreement. If it really

existed, we could not resist the belief that it was brought about by gross fraud; for such a transaction could not, under the circumstances, have been accomplished among men of ordinary prudence without some such means.    And the conduct of George in professing great anxiety to save stock which he must have known to be worthless, is, to say the least, very suspicious.    But, inasmuch as the agreement is not proved to our satisfaction, and would, under any circumstances, fail for want of consideration, it is unnecessary to inquire fully into the fraudulent circumstances charged.

Inasmuch as the real estate mortgage was not discharged or canceled, it remained operative in the hands of Davis unless afterwards satisfied.    If Rider desired to save his property, it was always in his power to take up the note, and then he would have been entitled to all Davis's rights under it.    Not having done this, Davis is entitled to foreclose.    If the debt is satisfied out of Rider's land, he will still have his remedy over against George, and he will also be entitled to the note and securities after Davis is fully paid.

It is claimed that Davis has converted the stock.    The evidence shows nothing of the kind.    He does not appear to have sold it, or to have changed the title in any way.    If he had sold it, the proceeds would have been a proper deduction from the debt.    If he had otherwise converted it, the value should be deducted; and that is shown to be nothing at all.    Upon a strict foreclosure, the rule is settled that the debt is canceled only to the extent of the value of the property.

We are therefore of opinion that the complainant is entitled to a decree of foreclosure and sale to satisfy the amount of George's note and interest, and that a decree should be entered accordingly.

The decree of the Court below must be reversed with costs, and a decree entered in accordance with the views above expressed.

The other Justices concurred.