### Ebenezer J. Penniman, Administrator, &c. v. Heman M. Perce and others.

### John B. Gibb, Administrator, &c. v. Heman M. Perce and others.

The question of the sufficiency of evidence to establish a gift from a wife to her husband, discussed by the Court.

Notes belonging to the wife were delivered to one who held a mortgage on the husband's lands, and a receipt taken therefor, to the wife and husband jointly, stating that the notes were to be held as collateral security, and applied, if paid, on the mortgage, or returned if the mortgage was otherwise paid. The wife died, and the holder of the mortgage filed a bill in Chancery to foreclose it. The administrator of the wife claimed that the land was the primary fund for the payment of the mortgage, and should be sold to satisfy the same, and the notes only resorted to for any deficiency, and that after the mortgage was paid, the notes belonged to him as administrator. The husband claimed that the notes were a gift from the wife to himself, to be applied in discharge of the mortgage. Whether the parol declarations of the wife, before and after the taking of the receipt, can be proved for the purpose of showing her intent that the notes should be applied in payment of the mortgage, *quere*.

*Heard November 14th, 1861.  Decided January 20th.*

Appeal from Wayne Circuit in Chancery.

Julius A. Austin, in his life time filed his bill in Chancery, against Heman M. Perce, John B. Gibb, Administrator of Abby S. Perce, late wife of said Heman, Peter Fralick and Mark Norris, to foreclose a mortgage, given by defendant Perce, June 12, 1847, to one Albert Stephens, to secure the payment of notes to the amount of $550, and which had been assigned to Austin. The bill, besides the ordinary allegations in a foreclosure bill, contains the following:

"Your orator further shows that on or about the ninth day of January, in the year one thousand eight hundred and fifty-five, the said Heman M. Perce and his wife Abby S. Perce, delivered to your orator two notes made by Mark Norris, one of which was dated September 2, 1854, for one hundred and ten dollars and interest at the rate of ten per cent., payable June 2, 1855, to the said Abby S. Perce or order, by the name of Abby S. Gibb, her maiden name before her intermarriage with the said Heman M.; also the other of said notes, being for two hundred and twenty-four dollars and forty-two cents, with

interest at the rate of ten per cent. per annum, payable. to said Abby S. Gibb or order, one year after the sixth day of October, 1854, and which said notes were endorsed by the said Abby S. Perce, and which notes your orator was to hold as collateral security, and apply as payments, if paid to your orator, on said notes and mortgage of said Perce, or to return if said notes and mortgage were otherwise paid to your orator, and for which notes your orator gave a receipt of the substance above set forth; that your orator still holds said notes, and they remain. wholly unpaid."

The bill prays decree for sale of the mortgaged premises, and that if there shall be a deficiency in the payment of the mortgage, then that he have decree over against Norris, for the payment of the balance upon said notes. Fralick was made a party as subsequent incumbrancer.

Austin died after the filing of the bill, and Penniman having been appointed his administrator, the suit was. revived in his name.

To this bill, defendant Perce answered, admitting the mortgage, and giving the following statement of the facts. attending the delivery of the Norris notes to Austin:

"And this defendant, further answering, says that on or about the ninth day of January, 1855, this defendant, together with Abby S. Perce, his then wife, since deceased, called on the complainant in relation to said notes and mortgage, when upon a statement of the amount due thereon, the said Abby S. Perce, then having and holding the two notes as stated in said bill, of the date and for the amount in said bill set forth, she then and there endorsed said notes, and delivered the same to this defendant for the purpose of having the same used by this defendant in the payment and satisfaction of the said notes and mortgage, whereupon this defendant delivered the said last mentioned notes, so as aforesaid endorsed over, to the said Austin, to be by him collected and applied in the

payment and satisfaction of the said notes and mortgage, and then and there took from the said ʻcomplainant his receipt for the said notes," "now in possession of this defendant," as follows:

"Received, Detroit, January 9, 1855, of Heman M. Perce and Abby S. Perce, one note signed Mark Norris, of date September 2, 1854, for one hundred and ten dollars, on interest at 10 per cent., due June 2, 1855; also one other note signed Mark Norris, date October 1, 1854, for two hundred and twenty - four dollars and forty - two cents, payable one year after date, interest at ten per cent., which I am to hold as collateral security, and apply as' payments (if paid to me), on H. M. Perce's mortgage and notes, or return if Perce's mortgage are otherwise paid to me.

*J. A. Austin.*"

"And this defendant, further answering, says that on delivering said notes to said complainant, he thereupon received the same, and then and there, as this defendant insists, by law undertook to use due diligence in the collection of the said notes, for the purpose of applying the avails thereof in the satisfaction of the said notes and mortgage, so far as the same should be necessary, and to return the balance thereof to this defendant."

And he insists that said Norris notes should be applied towards the satisfaction of said mortgage, and that the mortgaged premises should not be sold unless necessary after first applying the Norris notes.

Defendant Gibb answered, claiming that the mortgage in suit was the indebtedness of Heman M. Perce alone, that the Norris notes were never in the possession, custody or control of said Heman M. Perce, but were and are the separate estate of Perce's wife, and that Austin had no right thereto except to hold them as collateral, and apply them if paid.

The bill was taken as confessed by Norris and Fralick.

Gibb thereupon filed a cross bill against Heman M. Perce

and Austin — which, after the death of the latter, was revived against his administrator, Penniman — setting forth: that Abby S. Perce, then Abby S. Gibb, on October 6, 1854, was the owner of said Norris notes; that she intermarried with Heman M. Perce, December 31, 1854:

"That after the marriage herein before mentioned, of the said Abby S. with the said Heman M. Perce, and on or about the ninth day of January, 1855, and while the said Abby S. was still the owner and possessor of the said two notes made by said Mark Norris, she, the said Abby S., was induced by the solicitations of the said Heman M. Perce, to indorse and transfer, and did indorse and transfer the said two promissory notes made by said Norris to the said Julius A. Austin, and at the same time delivered said notes to said Austin with her own hands, to be held by said Austin as collateral security for the payment of the said mortgage and notes accompanying the same, or to be returned to her, the said Abby S., if the said mortgage and notes accompanying the same should be otherwise paid; that the said two notes were indorsed and transferred by said Abby S. to said Austin without any consideration whatever moving to the said Abby S., and that the said Heman M. Perce has not at any time had possession of, or any right to, or interest in, the said two notes made by said Norris, or either or any part thereof, but that said notes made by said Norris remained the separate property of said Abby S. until the time of her decease hereinafter mentioned, subject only to the rights of said Julius A. Austin as herein before mentioned;" that Abby S. Perce died August 31, 1855, and complainant was appointed her administrator: and claiming and insisting that, as such administrator, he is entitled to said notes, subject only to Austin's rights, and that the mortgaged premises should be first sold and the proceeds applied to the mortgage debt, and the Norris notes delivered over to complainant, as such administrator, or, if it should be necessary to apply any part of the

proceeds of said notes to the payment of the mortgage, after the sale of the mortgaged premises, then that the surplus remaining be paid over to complainant.

This bill was taken as confessed by Penniman.

Perce answered, admitting the ownership of the Norris notes by Abby S. Gibb, previous to her intermarriage with him, and setting forth: "that he admits that on or about the 9th day of January, A. D. 1855, the said Abby S. then being the wife of this defendant, under the name of Abby S. Perce, did endorse in her own proper name the said two promissory notes referred to in said bill and made by Mark Norris, and delivered the same, in the presence of this defendant, to the said defendant, Julius A. Austin. But the defendant denies, as in said bill most falsely stated and deposed, that the endorsement and delivery of said notes to the said defendant Austin, was done by the said Abby S. Perce on the solicitation of this defendant, or that she was induced so to do by the solicitation of this defendant to endorse and transfer said notes, or that she did so do under any such influence, but on the contrary thereof, this defendant avers and charges that the said Abby S. Perce endorsed and delivered said notes to defendant Austin for the purpose of paying said mortgage, of her own free will and accord, and without any of the solicitation of this defendant as is in the said cross bill most falsely supposed; and this defendant expressly denies, as in said cross bill supposed, that said notes were, by the said Abby S. Perce, endorsed and transferred to the said defendant Austin as collateral security for the notes and mortgage in said bill stated, but avers and charges that the same was done for the purpose of having the same by the said Austin enforced and collected, and applied to the payment of the said notes and mortgage of this defendant and his former wife, as in said bill stated.

"That so far from this defendant exerting or attempting to exert any influence, by solicitation or otherwise, to

induce his said wife, Abby S. Gibb, to indorse and deliver said two notes, as in and by said bill most falsely supposed and stated, to the said defendant Austin, for the purpose of paying and satisfying said notes and mortgage so given by this defendant and his former wife, this defendant on the contrary thereof avers and charges that from at or about the time of his said marriage with the said Abby S. Gibb, and her becoming his wife as aforesaid, she, of her own accord, stated to this defendant that she held the said Norris notes, and that she wished to give them to this defendant for the purpose of paying said notes and mortgage, and as a reason for so doing she among other things freely and frequently stated that she had no relations, by blood or otherwise, that she ever wished should have any of her property, from the manner in which they had treated her, and that she wished the said Norris notes applied to the payment of the said notes and mortgage, which was on the premises then and up to the time of his said wife's death occupied by this defendant and his said wife as a home; that in pursuance of an often expressed determination of the defendant's wife, the said Abby S., she, the said Abby S., came into Detroit, among other things for the express purpose of having said Norris notes applied to the payment of the said notes and mortgage then in the hands of the said defendant Julius A. Austin, on the day of the date of the said endorsement and delivery of said notes as set forth in said bill: and this defendant expressly denies that the said Abby S. did, or intended to retain any right, title or interest, in or to said notes or either of them, or the moneys therein or thereby secured, but fully intended absolutely to dispose of the same as she had often fully and clearly expressed, before endorsing and delivering the same, as is in said bill set forth, but the object was that the said defendant Austin should collect the same as they became due, and apply the avails thereof to the payment of the said notes and mortgage,

as this defendant insists that in justice and good faith he ought long since to have done, and not to have sought to foreclose said mortgage, which this defendant insists and charges is in bad faith, and in violation of his duty in the premises.

"And the defendant further answering says: he denies, as in said bill supposed, that the said Norris notes were only endorsed and delivered to the said Austin as collateral security, but on the contrary thereof he avers the same were so endorsed and delivered for the purpose of being collected and applied to the payment of the said notes and mortgage; and denies, as in said bill supposed and stated, that he, this defendant, never had the possession of the said Norris notes or any right to or interest in the same, but on the contrary thereof he avers and charges that he became the true and lawful owner of the same, and fully entitled to the possession thereof, as well as the full and legal ownership, until the same were by his assent assigned and transferred to the said defendant Austin for the purpose aforesaid, and this not only in virtue of his marital rights, but by virtue of said assignment and the subsequent death of his wife, Abby S. Perce.

"And this defendant further answering says: he admits the said Abby S. Perce departed this life intestate, on or about the time and at the place in said bill stated, and he further admits that administration upon her estate was in fact granted as is in said bill stated, but he avers and insists that the same was wrongfully granted to the said complainant, and without lawful warrant or authority, and legally belonged to him as the surviving husband of the said Abby S., whose personal property also belonged to him as such survivor."

Replications were filed in both cases, and testimony taken as follows:

"*James Sutliff*, testified: "I knew Abby S. Gibb, who subsequently became wife of Heman M. Perce: I had a

conversation with her after her marriage with Perce, in relation to two notes. I can't fix the time. It was at defendant Perce's house. I asked her how she got along. She said, better than I ever expected. I said, have you laid out your property as you expected? She said, yes, to my satisfaction. She told me that she had cleared the mortgage, and that she had got the farm clear, and that now she was satisfied. She said she had signed over the notes she held against Norris. I think she had signed away some notes to a man in Plymouth to pay a mortgage. It appears to me that the man's name was Austin, that held a mortgage against his property. It appears to me the name was Austin that held the mortgage. She had signed the notes to him. She stated like this: she said — my father is living, and I owe him nothing. I owe my brother nothing, and I would rather the property would go into any one's else hands but theirs. She told me she calculated that the defendant Perce should have the property — that she had signed it to him, and it was his. She said she had done so of her own free will—just as she had wanted to do. I think she said she had signed the notes off herself. She stated she had paid the notes on a mortgage."

*Cross-examined:* "I had heard that Mrs. Perce was rather dissatisfied, and that is why I asked her if she had made the assignment of her own free will. I thought I would know for myself, and I asked her. Said I, have you done all these things of your own free will, and are you satisfied with it? and she said, Yes. She said, now I have paid a mortgage on defendant's property, and if he should die I think I should have some security if I should outlive him. I told her that would be right. I never heard that he had promised to give security."

*Re-examined.* "Mrs. Perce told me that when defendant came to court her he told her he had a farm, but there was a mortgage on it, and she told him that she had enough to pay it."

*William B. Selleck*, testified: "I had a conversation with Mrs. Perce in the year 1855; I think between January and 4th July. She was at my house occasionally. She said she had some property. I asked her if it was in money, and she said notes, and she had turned them out to Julius A. Austin on a mortgage against defendant's farm. She felt anxious to have it fixed so that there would be nothing against the farm. She said by paying up the mortgage, defendant Perce would be able to build a house. She said it was money of her own earning, and she had no one to thank for it. I think she said that she and defendant had been down, and she had turned out the notes on the mortgage.

*Calvin B. Crosby*, testified: "I had some conversation with Mrs. Perce about notes. It was in May or June, 1855. She said she had some notes, and she intended them to assist to pay some debts of defendant Perce. She did not say whether she had or intended to do so. I asked her to buy some goods. She said she could not buy any goods until their debts were paid — they wanted to build a house. This conversation was at Fralick & Crosby's store, in Plymouth. Defendant Perce and she were there together; defendant heard the conversation. Something said about the debts of the defendant two or three times in my presence, of the same tenor."

*Mrs. Selleck* testified: "I had a conversation with Mrs. Perce in 1855, in January; near the last of January. I frequently met her; was at her house. I saw her as often as every two or three months. She stated to me that defendant Perce had informed her before her marriage he had a debt on his place. She said that she had paid over something, but she did not say whether it was money or notes. She said it was a mortgage on the place, which Mr. Austin held in Detroit. She did not state the amount. She stated she had paid over. She had been to Mr. Austin with defendant. She did not state what it was which

was paid, notes or money — I supposed it was money. She said she had volunteered to pay, as she said she thought it would be better to have the place paid for before they built. She spoke as if she had volunteered to pay it. She stated several times that she knew defendant's circumstances, and she wished to help him. She never stated to me that she expected any thing back."

*Halmer Selleck* testified: "I had a conversation with Mrs. Perce, I think in January, 1855. She said that as soon as she felt herself at home, she told defendant Perce that she had means by which she could release the mortgage or mortgages. He said he did not expect any such thing. She told him she was willing to pay it. He then remarked that she had better keep the money for her own use. She said that she told him it was her choice, and what was hers was his, and that they then took a team and came to Detroit, and saw Mr. Austin, and paid over. Do not think she named the amount. She said something from which I drew the inference, that what she paid was notes or orders on a man named Norris, in Ypsilanti. She said they paid over the property to Austin, and released the mortgage, but left $56 unpaid. She said she offered to do it, and that defendant Perce told her that she had better not, and she told him it was her home there, and she would rather do it; she did not like the idea of building without paying it. She spoke to me upon the subject, and to the same effect, in February. She said distinctly that it was her own free act. She said nothing about any thing to come back, or in relation to any security. She stated (I am confident) that it was a mortgage held by Mr. Austin, on Perce's farm, and that was what she proposed discharging."

*Peter Fralick* testified: "Mrs. Heman Perce said to me, in the early part of January, 1855, and also in the latter part of the same month, that she was desirous of saving all the money she could, and that neither she nor Mr.

Perce wished to purchase any articles, except those of necessity, until they had paid the mortgage which was on their place. She also said that she had money or notes enough to pay the mortgage except twenty or forty dollars, and that it was their intention to pay it before contracting any more debts. She expressed an entire willingness, so far as I could judge, to apply the money or note which she held in payment of the mortgage. The mortgage referred to was understood by me to be the Austin mortgage. These remarks were made by her in reply to my request of her to purchase more goods of me."

*Horace Perce*, testified: "I was present at a conversation between Heman M. Perce and Abby S. Perce, his wife. It was two years ago this winter, at the house of Heman Perce, in the town of Nankin, Wayne county. I heard Mrs. Perce say on that occasion that she did not want her father to have her property. I have heard her say so a number of times. Mr. Perce was present, also the complainant's son, Dewitt, and myself. She made the remark to all present. We had all been talking about her property. I heard Mrs. Perce say she had been down to Detroit, and turned the notes out to Mr. Austin on the debt on the farm. The notes were against Mark Norris. This was at another conversation, the same winter. It was before the other conversation. It was me that she told about the notes. She had been to Detroit, and when she came back I asked her what her business was at Detroit, and she then said she had gone to Detroit to turn out the Norris notes to Mr. Austin in payment of the debts on the farm, and that Mr. Austin had received them."

The testimony, so far as it went to show the *intention* of Mrs. Perce, in transferring the notes to Austin, was objected to by the counsel for Gibb, on the ground that the receipt was the best evidence.

The causes being brought to a hearing upon the foregoing pleadings and evidence, the Circuit Court made a

decree dismissing the cross-bill with costs, and ordering that the Norris notes be first paid to Penniman towards satisfaction of the Perce mortgage, and that Perce then pay the balance of the mortgage, and in default thereof, that the mortgaged premises be sold to satisfy such balance. Gibb appealed from this decree.

*Norris & Ninde,* for the appellant, Gibb:

If Heman M. Perce *can* hold any interest in these notes, it will be because the Court will find for him, on the *only issue he makes,* that of *payment to,* and *acceptance by* Austin, on his mortgage.

We assume as a starting point in the argument, that, on the day of the date of the receipt-contract, Abby S. Perce was the owner and actual holder of the two Norris notes in controversy; that she held them by actual manual possession, with all the rights given her by the Constitution and laws of this State then in force, relative to the separate property of married women:— *Const. Art. XVI, Sec.* 5; *Comp. L.* §§ 3289, 3292; 6 *Mich.* 233.

On that day (with her husband's assent) she made a disposition of the notes.

What was the contract she made? It was in writing, signed by Austin, and delivered to and accepted by her, to wit: the receipt-contract of the 9th January, 1855— *neither more nor less:*— 1 *Greenl. Ev.* § 305; 1 *Pars. Cont.* 68, *and cases cited.* Its consideration springs wholly from the relation of husband and wife, subsisting between H. M. and Abby S. Perce.

The rights under this contract, of Julius A. Austin, and his representative, Penniman, are to be determined from the proper interpretation of its *terms uncontrolled* by *any parol testimony.* 1st. By its terms, he is "*to hold as collateral*"— "if paid he is to apply"— "if the mortgage and notes are otherwise paid, he is to return" to the owner. 2d. By the law applicable to this contract, he holds these

notes as *pawnee*, as a mere pledge, having only a *special* property, to be used if *necessary*, *after* exhausting his remedy against Perce, or at best, to *sell* at public auction, *after* demand, or by judicial decree:— 1 *Pars. Cont.* 591; 12 *Johns.* 149; 2 *Caines Cases*, 204, 205; 2 *Hill.* on *Mort. App.* 519—36, *cases collected.*

What are the rights of Heman M. Perce under this contract? 1st. He *claims none.* He says they belong to Austin. He asks only the surplus, and there is none—but a balance due from him, if the notes *are* applied as payment. 2d. He has no right to *compel* Austin's representative to collect and apply these notes as payment, because such is not Austin's undertaking, either in words, or in effect, and because this would override the rights of the wife. 3d. He has no rights as the survivor of his wife, because (1st.) he has never reduced these notes to possession, actually, or by taking out letters of administration, (granting that the law of survivorship is in harmony with our married woman's act, which it is not); and (2d) the question is no way in this case, for *non constat* but that she may have died in debt, or sold, or mortgaged, or willed, her *general* property in these notes in her life time, as she had full power to do; and (3d) that question can be settled best before the Probate Court, between her creditors and assignees, and her husband, on the distribution of her estate; and (4th) he has no rights growing out of the fact of the receipt - contract being in their joint names: this is simply his assent to the transfer, as sufficiently appears from his own answers. This assent was necessary on the 9th January, 1855 — not after the 13th February, 1855.

What are the rights of Abby S. Perce, and the administrator of her estate? 1st. Her administrator, Gibb, has, in this case, exactly the rights his intestate had, at her death. 2 *Comp. L.* § 2904; 4 *Mich.* 132. 2d. The intestate's rights at her death were, by the terms of the contract, a "*return of the notes*" — if Norris did not voluntarily pay them,

and Austin apply that payment — if it did not become necessary to use them to make good Perce's debt, *after* foreclosure and sale — or if Austin did not legally sell them — Austin's lien being at an end. The administrator of Abby S. Perce's estate is to be put in the same position she was in at the time she made the contract and passed the notes to Austin. Equity *first* requires that to be done; then if Heman M. Perce has any "marital rights," they can be determined in the Probate Court, when his wife's separate estate comes to be distributed.

The parol testimony does not aid the defendant Perce.

The statements made prior to January 9th, 1855, of her intention, were colloquial, and were *merged* in the receipt - contract: — 1 *Greenl. Ev.* § 275. The objection to those made after that date are, 1st. No parol testimony will be allowed to vary the terms of the receipt-contract, which is conclusively presumed to contain the whole contract between the parties: — 1 *Greenl. Ev.* §§ 275, 277; 2 *Pars. Cont.* 68; 4 *Seld.* 406; and 2d, they are statements and admissions of the wife in behalf of her husband, and are incompetent: — 1 *Greenl. Ev.* §§ 341, 344; 1 *Phil. Ev.* 76, *and notes;* 1 *Barb. Ch. Pr.* 264; 3 *Paige,* 36; 2 *Mich.* 394; 5 *Seld.* 153.

*Finally,* The relation of principal and surety clearly existed between Perce and wife, and the husband's property was the *primary* fund for the payment of his debt, and the wife's note the *auxiliary* fund; bringing this case within the rule in 3 *Sand. Ch.* 155; 6 *Paige,* 521; 3 *Paige,* 614; 11 *Wend.* 312.

*Backus & Harbaugh,* for defendant Perce:

1. At common law, in virtue of his marital right, these notes are the husband's absolutely, as survivor of his wife: 3 *Atk.* 526; 6 *Johns.* 119; 2 *Kent.* 114, 135; 28 *Barb.* 636. This common law right is not abridged by our Constitution and laws. These only give her the absolute control and,

disposition of her separate property by will or otherwise, as if she were a *feme sole*. But if she fails to exercise this right and power, then the same at her decease becomes fully subject to the common law right of the husband: 28 *Barb*. 639; 2 *Kern*. 202. Provisions as to the rights of married women will be held and construed as no further disturbing the settled rules of the common law than necessary to give them effect: — 7 *Barb*. 368; 1 *Kent*, (3*d ed*.) 464.

2. The receipt of Austin is evidence only of the contract between him and Perce and wife, as to the use Austin should make of the notes. It in no way limits the admissibility of other evidence showing the character and extent of the contract between Perce and his wife, as to her donation or appropriation of the notes to the payment of the mortgage. But the receipt itself and the indorsement of the note show this to have been the wife's intention; and uncontradicted are sufficient evidence of reduction into possession by the husband with the assent of the wife.

3. The parol evidence of declarations by the wife were competent. Having the power, under the Constitution and statutes, to act as a *feme sole*, with respect to her separate property, of consequence all her acts and declarations are and must be to the same extent efficient and operative as if she were a feme sole. But even before the statutes, such evidence would have been competent, and the best evidence to establish a gift: — 2 *Kent*, 150; 10 *Johns*. 38; 25 *Barb*. 33. See also, 3 *Comst*. 93; 25 *Barb*. 511; 32 *E. L. & E.* 25. A gift by a married woman to her husband is as effectual as between other parties, and especially where she is dealing with her personal property: — 28 *Barb*. 622.

MANNING J.:

The only question in this case arises on the cross-bill, and is whether Abby S. Perce, who was the holder and owner of two promissory notes at and previous to her

intermarriage with Heman M. Perce, after such marriage gave them to her husband. He acquired no interest in the notes by the marriage; they remained the property of his wife the same after the marriage as before, except that she could not sell or dispose of them without the consent of her husband, as the law then was: — *Comp. L.* § 3289. This restriction on her right of disposition was soon afterwards removed: — *Comp. L.* § 3292. Her husband therefore had no interest in the notes unless they were given to him by his wife. The evidence relied on to show a gift I do not think sufficient. Austin's receipt of the 9th January, 1855, shows a transfer of the notes to him by Perce and wife as collateral security for the payment of a mortgage and notes Austin held against Perce. By the terms of the receipt, the proceeds of the notes, if they were paid to Austin, were to be applied by him on Perce's notes and mortgage, and if Perce's notes and mortgage were otherwise paid, the notes were to be returned by Austin. In this, I see nothing more than a pledge by the wife and her husband (for it was necessary as the law then stood that the husband should join with his wife in making the pledge) of the wife's property as security for the payment of the husband's debt.

A pledge for the purposes stated, and not a gift, is all the receipt and circumstances attending the transaction show. The receipt is to both; but why was her name included in it if she had given the notes to her husband? She with her husband called on Austin, and on the arrangement being agreed upon between them and Austin, she indorsed the notes and handed them over to Austin. It does not appear her husband so much as ever had the notes in his possession; and the transaction, it should be recollected, took place within ten days after they were married.

The parol testimony in support of a gift all has reference to this transaction, and not to any other. And besides

being extremely vague and uncertain, and sometimes contradictory to itself, should not be received even if it was of a more satisfactory character than it is, to contradict the written evidence of its true character, to be found in the receipt of Austin, understood and construed by the circumstances attending its execution.

The most that can be said of the parol evidence is, that it shows an intention of the wife to use the money due her on the notes to pay off the mortgage, *if necessary* to secure the ,mortgaged premises as a homestead. An intention that was not consummated at the time of her death. And had it been carried into effect, it could not so properly be called a gift as an appropriation of the money for an object in which she would have had an interest beyond the control of her husband without her voluntary consent.

I think the decree should be modified so as to conform to the above views.

CHRISTIANCY J. concurred.

CAMPBELL J.:

The contest in this case is entirely between Heman M. Perce and the Administrator of his late wife Abby S. Perce, so far as the principal merits are concerned, and is to determine whether the Administrator has a right to the notes received by Julius A. Austin from her. As the other parties are satisfied with the decree as it stands, and have not appealed from it, any claim which they might have asserted against it is immaterial. Whether, however, they can be deprived of any right now reserved to them under the decree, is a question which does arise, and which may in some aspects of the case become material.

The circumstances under which Mrs. Perce transferred the Norris notes to Austin, as appears from the case, are substantially as follows: Heman M. Perce, her husband,

owned a homestead, which was mortgaged to Austin; and after her marriage they desired to build a new house on the farm. Mrs. Perce having the Norris notes, and being desirous of getting the property clear, transferred them to Austin, who agreed to receive them as collateral security. Whether they passed through her husband's hands is in my view entirely immaterial. If paid, the proceeds, which would nearly cancel the mortgage, were to be applied on it. If the mortgage should be paid otherwise, the notes were to be returned; and here again, in my judgment, it can make no difference whether they were to be returned to Mrs. Perce, or to her husband. The receipt given by Austin shows what *his* rights were, but does not show anything concerning the arrangements of Mrs. Perce, or her designs, or reasons. Those I think sufficiently appear from the other evidence. But the design apparent from the receipt is entirely consistent with the other evidence in regard to what is a main feature of the case. It is very clear that she never desired or designed that the land should be sold in preference to having her notes collected and applied. Both the receipt and the testimony show plainly that the payment from other sources than the notes, upon which the notes were to be returned, meant payment by other means than foreclosure. The evidence of her desire to save the land at all events is entirely convincing and undisputed. No other object could explain the transfer, even if there were no proofs on the subject. But the proof is abundant.

The case is not changed by her death from what it would have been had she in person, instead of her administrator, been a party. And did the receipt stand alone, a claim on her part to compel Austin to look to the land before using the notes she had herself given as collateral, would not I think be at all consistent with any purpose for which such collaterals are ever given. A dispute arose in *Davis v. Rider*, 5 *Mich.* 423, whether a

person holding collaterals must not first resort to them. We held that he need not do so. But it would be difficult to find authorities negativing his right to do so, if he pleased. And the evidence shows that the sale of the land would have been the last thing desired by her, inasmuch as it would deprive her and her husband of their homestead, and of all improvements made on it, a portion of which at least we may gather from the witnesses were to be paid for by her assistance as well as by means saved by her economy.

I am unable to draw any other conclusion from the case than that she meant, so far as she was able, to have the lands cleared from encumbrance by her means, and that she meant to appropriate these notes to be, as between notes and land, a primary and not a secondary fund. She could not compel Austin to resort to them first; but it is clear that such was her desire. And I do not see how she could have done more to complete the appropriation.

Courts have never been so particular in requiring exact proof in cases of gifts or appropriations of the separate property of married women in favor of their husbands as in other cases, for the obvious reason that testimony concerning their mutual acts is not legally attainable. In all cases where an intention is manifested to give him the benefit of it, and it requires no further formal transfer, the gift or appropriation has been sustained unless impeached for deceit, oppression, or some manifest unfairness. The law has never required her to restrain her generosity from her husband when it is left unrestrained as to the rest of the world; neither does it assume that he has cheated or over-persuaded her into it. And if this transaction, when made, would have been entirely for his benefit, I see no reason for questioning its validity or conclusiveness. And on the other hand, if it was originally not entirely for his benefit, the fact that by his survivorship it may have become so can not deprive it of its original character and sufficiency.

When we consider the circumstances under which Mrs. Perce became induced (or rather determined of her own will, for it appears that her husband did not request her), to appropriate the notes to pay the mortgage, so far as they would go, we shall find that she was providing directly for her own individual benefit, and not merely saving her husband's property. Under our Constitution, the wife has an absolute and vested interest in the homestead, which her husband has no power to discharge or affect. The exemption is not under his control, and he can not waive or destroy it. It is intended for her benefit as much as his. (See *Beecher v. Baldy*, 7 *Mich.* 488). As the mortgage held by Austin was made before her marriage, it of course was valid as against her interest in the homestead, and she therefore had a direct interest in having it cleared off, and thus securing herself a home against all contingencies. The testimony of Fralick, Crosby and the Sellecks, shows how anxious she was to get the place clear of incumbrance, in order for building a new house, and she was evidently anxious to secure a comfortable home. That she did not live to enjoy it does not change the force of her design when the arrangement was made.

I think such an application as that of her administrator, whatever might have been the facts, is without precedent, and unsustainable upon any principle. But I prefer to put my conclusions upon the merits, and therefore I shall not go into any discussion of that question. I think the decree contains no error of which the appellant can complain, and should be affirmed.

MARTIN CH. J. concurred in the result of this opinion.

The Court being thus equally divided, the decree of the Court below was *affirmed*.